**UNITED STATES of America, Appellee,**

v.

**Abiodun T. GIWAH, Defendant–Appellant.**

Nos. 635, 732, 389, Dockets 95–1229, 95–1230, 95–1242.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1995.

Decided May 22, 1996.

Louis R. Aidala, New York City (Martin Geoffrey Goldberg, New York City, on the brief), for Defendant–Appellant.

Douglas M. Lankler, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Ira M. Feinberg, Assistant United States Attorney, New York City, of counsel), for Appellee.

Before: CARDAMONE, WALKER, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Abiodun Giwah pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341, one count of bail jumping in violation of 18 U.S.C. § 3146(a)(1) & (b)(1)(A)(ii), and one count of credit card fraud in violation of 18 U.S.C. § 1029(a)(2). He appeals two portions of his sentence: a thirty-three month

prison term and an order to make restitution to the victims of his fraud in the amount of $79,265 in payments of at least 15% of his annual gross earnings. As for his prison sentence, Giwah argues that the United States District Court for the Southern District of New York (Allen G. Schwartz, *District Judge*) improperly refused to grant a downward adjustment for acceptance of responsibility. As for the restitution order, Giwah argues that (1) the district court failed to comply with the statutory procedure for imposing restitution, and (2) it was improper to order restitution payments of at least 15% of his income.

For the reasons explained below, we affirm the prison sentence, vacate the restitution order and remand for reconsideration thereof.

## I.  BACKGROUND

Giwah pleaded guilty to three criminal charges in January 1995: a count of mail fraud, a count of bail jumping, and a count of credit card fraud.

### A.  *The Crimes*

The mail fraud charge stems from two money market accounts which Giwah opened in the spring of 1991. He opened these accounts with stolen checks totalling $81,180, and then withdrew $60,600 before the financial institution, Dreyfus, realized the illegality of the accounts and froze the assets in them. Giwah was arrested on this charge on February 8, 1993. He pleaded not guilty that same day and was released on a $50,000 personal recognizance bond.

While out on bail, however, Giwah committed two more crimes. First, during the summer and fall of 1993, he opened two Citicorp Diner's Club card accounts under false names and charged $18,665 worth of purchases. This amount was lost by Citicorp. This conduct violated 18 U.S.C. § 1029(a)(2), the credit card fraud statute. Second, he jumped bail when he failed to appear at a December 3, 1993 pre-trial hearing relating to the mail fraud charge, in violation of 18 U.S.C. § 3146(a)(1) & (b)(1)(A)(ii).

Giwah was indicted for bail jumping on December 28, 1993, and was arrested on that charge in February 1994. He has been in federal custody since that time. Because he used fake names to perpetrate the credit card fraud, federal authorities did not connect Giwah to that crime until after his February 1994 arrest. Giwah was indicted for credit card fraud on December 19, 1994.

### B.  *The Plea Agreement*

Giwah pleaded guilty on January 27, 1995, to all three indictments. In the plea agreement with the government, he agreed that his adjusted offense level pursuant to the United States Sentencing Guidelines ("USSG") was 16. This figure reflected a base offense level of 12 from grouping the two fraud counts and totalling the amounts of money they involved, increased by 2 for more than minimal planning pursuant to U.S.S.G. § 2F1.1(b)(2), and by another 2 due to the additional count of bail jumping pursuant to USSG § 3D1.4 (rules for calculating effect of count grouping). Giwah and the government also agreed to a three level decrease for acceptance of responsibility pursuant to USSG § 3E1.1. This decrease brought the total offense level to 13. For purposes of the agreement, Giwah's criminal history level was calculated to be category III. Lastly, the agreement stated that neither the court nor the Probation Department was bound by the sentencing calculations in the agreement and that "defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above."

The Probation Department in its Presentence Report ("PSR") also calculated Giwah's adjusted offense level to be 16, though in a slightly different way. Rather than considering the bail jumping offense as an additional count to be calculated pursuant to USSG § 3D1.4 (resulting in a two point increase pursuant to count-grouping rules), the probation department treated bail jumping as an obstruction of justice relating to the mail fraud count pursuant to USSG § 3C1.1, comment. (n.6), resulting in a two point increase. Also in contrast to the plea agreement, the Probation Department determined that Gi-

wah deserved only a two point reduction, not three, for acceptance of responsibility. Thus the total offense level according to the Probation Department was 14. The Probation Department reasoned that Giwah did not deserve the additional downward adjustment for acceptance of responsibility under USSG § 3E1.1(b) because he waited more than a year and a half between his first indictment on mail fraud and his eventual guilty plea.

The Probation Department also recommended that the court order Giwah to pay, "with at least 10% of his gross earnings, full restitution" to Dreyfus and Citicorp.

## C. *The Sentence*

At sentencing, Judge Schwartz adopted the Probation Department's recommended adjusted offense level of 16, including the obstruction of justice enhancement pursuant to USSG § 3C1.1. Judge Schwartz gave two reasons for applying the obstruction enhancement. First, he found that Giwah perjured himself during a suppression hearing on August 25, 1994 relating to the mail fraud charge. Second, the court emphasized Giwah's bail jumping.

But Judge Schwartz rejected both the plea agreement and the PSR when he refused any downward adjustment for acceptance of responsibility under § 3E1.1. He reasoned that this was not an "extraordinary case" such that it would warrant both the obstruction enhancement of § 3C1.1 and the acceptance reduction of § 3E1.1. *See* USSG § 3E1.1, comment. (n.4). Judge Schwartz explained that Giwah's "extensive efforts [to] obstruct justice at the very least militates in favor of" rejecting the acceptance deduction.

Giwah was sentenced to thirty-three months in prison, the highest sentence within the applicable guideline range (offense level 16, criminal history category III), to be followed by three years of supervised release. Judge Schwartz also ordered Giwah to pay over $79,000 in restitution, "at a rate of at least 15 percent of his annual gross earnings," during Giwah's supervised release. Judge Schwartz did not impose a fine, though the Guidelines called for one between $4,000 and $40,000, "because I find the defendant has not the ability to pay a fine."

## II. DISCUSSION

### A. *The Prison Sentence*

#### 1. *Standard of Review*

■ Whether there has been an acceptance of responsibility is a fact-question and the circuit court will not reverse the district court's finding on this issue unless it is "without foundation." *United States v. Harris,* 13 F.3d 555, 557 (2d Cir.1994) (citing *United States v. Irabor,* 894 F.2d 554, 557 (2d Cir. 1990)). Accordingly, a district court's decision regarding a defendant's acceptance of responsibility in a sentencing calculation "is entitled to great deference on review." USSG § 3E1.1, comment. (n.5).

#### 2. *Review*

■ As discussed in the statement of facts above, the district court based its refusal to give Giwah the benefit of accepting responsibility on (1) Giwah's perjury in an evidentiary hearing relating to his mail fraud charge and (2) Giwah's bail jumping. The propriety of the obstruction enhancement is clear. Failing to appear for a judicial proceeding is one prototype of justice obstruction under the guidelines. *See* USSG § 3C1.1, comment. (n.3(e)). It is also perfectly proper to base a § 3C1.1 enhancement and the denial of a § 3E1.1 reduction on the same conduct of the defendant. *United States v. Echevarria,* 33 F.3d 175, 179 (2d Cir.1994) (doing so is not impermissible double-counting). Under application note 4 to § 3E1.1, it takes an "extraordinary case" to justify the simultaneous application of the obstruction increase and the acceptance decrease. Giwah makes no argument that this is such an extraordinary case other than his attempt to minimize the seriousness of his justice-obstructing conduct.

■ For example, he argues that his perjury at an evidentiary hearing should not count against him because it was in response to aggressive questioning from the bench. This argument is breathtaking. Perjury is no less serious when it is committed in response to questions from a judge than when

it is committed while answering a lawyer's inquiry.

Giwah also argues that the perjury occurred long before the plea agreement. Therefore, he reasons, the obstruction was not very serious. Guideline § 1B1.3(a)(1) makes clear that all acts "that occurred ... in the course of attempting to avoid detection or responsibility for that offense" "shall" be considered in determining the appropriate adjusted offense level. Giwah's argument ignores this. His perjury can only be seen as an attempt to avoid responsibility or detection for his mail fraud crime.

In a more technical argument, Giwah contends that the obstruction enhancement should not apply (and therefore the acceptance reduction should apply) to the credit card fraud count because he was indicted on the credit card count after he engaged in the justice-obstructing conduct. He argues that he deserves an acceptance reduction for the credit card count because he pleaded guilty thereto only a month after indictment.

There are many problems with this argument. The first problem is that the sentence does not change if the credit card conviction is thrown out. Guideline § 2F1.1(b)(1)(G) assigns the same base offense level to all frauds where the intended loss is more than $70,000 but less than $120,000. Here, Giwah and the Government agree that the intended loss in the mail fraud scheme was more than $80,000. The credit card fraud adds approximately $18,000 to the total. Combining the amounts from the two frauds does not increase the base offense level above that for the mail fraud alone. Furthermore, the mail fraud charge involved more than minimal planning. *See* USSG § 1B1.1, comment. (n.1(f)) (minimal planning exists where there are repeated acts over a period of time). Thus before the obstruction enhancement is applied, the base offense level is 14 regardless of the credit card count. This being the case, it is irrelevant whether Giwah accepted responsibility for the credit card count: The adjusted offense level is, therefore, 16 (14 + 2 from the obstruction adjustment).

■ The other major problem with this argument is that it ignores how the guidelines work. Guideline § 3D1.2 mandates

that counts "be grouped together into a single Group .... (d) When the offense level is determined largely on the basis of the total amount of harm or loss." Application note 6 provides a relevant example:

(3) The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together.

USSG § 3D1.2, comment. (n.6). As in this example, Giwah engaged in multiple fraud schemes. The counts "shall be grouped together." USSG 3D1.2. There is no error in considering the issue of acceptance of responsibility only after counts have been appropriately grouped. *See United States v. Mizrachi*, 48 F.3d 651, 655–56 (2d Cir.1995).

■ The last issue raised with respect to the refusal to grant the acceptance reduction is whether Giwah was entitled to advance notice of the denial of that reduction. A defendant's acceptance of responsibility is always a factor which must be considered before sentencing. The Guidelines make clear that a guilty plea does not entitle the defendant to an acceptance reduction and that the defendant must prove to the court that he or she has accepted responsibility. USSG § 3E1.1, comment. (n.3). To argue that the defendant needs special notice before the court declines to adjust downward is inconsistent with that authority. This is especially true where, as here, the defendant stands convicted of, *inter alia*, jumping bail, constituting obstruction of justice which notifies defendant that an acceptance reduction will likely be difficult to obtain, at best.

## B. *Restitution*

### 1. *Standard of Review*

18 U.S.C. § 3663(a) authorizes the sentencing court to "order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." We explained in *United States v. Porter*, 41 F.3d 68, 70 (2d Cir.1994), that the statute "require[s] restitution whenever pos-

sible." *See also* USSG § 5E1.1(a)(1) ("The court shall ... enter a restitution order if such order is authorized under 18 U.S.C. §§ 3663–3664...").

■ The district court must consider certain factors when it decides whether to impose restitution. The sentencing court "shall" consider

> the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a). If the record fails to demonstrate that the court considered these mandatory factors, then this court will vacate a restitution order. *United States v. Soto,* 47 F.3d 546, 551 (2d Cir.1995); *United States v. Tortora,* 994 F.2d 79, 81 (2d Cir.1993); *United States v. Gelb,* 944 F.2d 52, 56–57 (2d Cir.1991). The district court need not make specific findings with respect to each of these factors, but the record must reflect that the court did consider them. *United States v. Mortimer,* 52 F.3d 429, 436 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995).

■ The threshold issue (the only issue we reach) is whether the record reflects that the district court engaged in the factor analysis which Congress has mandated in 18 U.S.C. § 3664(a), and not whether the district court's consideration of those factors was an abuse of discretion. In the latter instance, the standard of review is extremely deferential. *See United States v. Atkinson,* 788 F.2d 900, 902 (2d Cir.1986).

### 2. *Review*

■ The government argues that the Probation Department's PSR in this case considered the § 3664(a) factors and the district court satisfied the procedural requirements for the imposition of an order of restitution when it "followed in large part the recommendations of the Probation Department." There are two problems with this argument. First, the PSR appears to have detailed only the loss to the victims and Giwah's ability to pay. The government does not tell us how the PSR considered, in the words of § 3664(a), "the financial needs ... of the defendant and the defendant's dependents." Those considerations are mandatory.

Second, the district court did not follow the recommendation of the PSR. The PSR recommended an order of full restitution (over $79,000), to be paid "with at least 10% of [Giwah's] gross earnings." In contrast, the district court ordered that restitution be paid "at a rate of at least 15 percent of the defendant's annual gross earnings." Thus the PSR recommended 10% and the district court ordered 15%.

In *Soto,* we held "that it is not enough for a district court to have before it a PSR which includes information that would be relevant to the consideration mandated by § 3664(a)." 47 F.3d at 551. Even if the PSR adequately considers the § 3664(a) factors, that fact alone is not enough to insulate a restitution order from being vacated by this court. There must be "an affirmative act or statement allowing an inference that the district court in fact considered" the mandatory factors. 47 F.3d at 551. As in *Mortimer,* 52 F.3d at 436, here the district court indicated its consideration of the defendant's ability to pay restitution when it decided not to order Giwah to pay a fine, stating that the defendant lacked the ability to pay a fine. Such a decision, coupled with such a statement,[1] permits an inference that the court did consider the defendant's ability to pay when ruling on restitution.

There must, however, be a sufficient basis in the record for this court to infer that all of the § 3664(a) factors have been considered. These factors include the financial needs of the defendant and the defendant's dependents. In this case, the terms of the restitu-

---

[1]. We have held that the decision not to impose a fine alone, without a statement from the district court explaining that decision, does not satisfy the requirement of "an affirmative act or state-ment allowing an inference that the district court in fact considered the defendant's ability to pay." *See Soto,* 47 F.3d at 551.

tion order fail to evidence sufficient consideration of these factors.

It could be argued that the terms of Giwah's restitution order (i.e., payments of at least 15% of Giwah's income) inherently reflect consideration of Giwah's financial needs such that the restitution should survive appellate review. But reducing the income of a person who earns barely enough to pay routine living expenses by 15% will have a different impact than the same order imposed on a person with more income. Congress reflected such concerns when it specified that restitution orders are enforceable like civil judgments, 18 U.S.C. § 3663(h), and that civil judgments should not reach certain minimum earnings. *See* 15 U.S.C. § 1673 (insulating from garnishment the greater of thirty times the minimum hourly wage per week or 75% of the judgment debtor's disposable earnings).

In this case, the restitution order imposed against Giwah does not evidence such consideration. The order to pay 15% of income is not coupled with evidence that such a percentage is not unduly harsh, nor is it accompanied with a safety valve such as the terms found in 15 U.S.C. § 1673. The contrary is true. The district court's finding that Giwah lacks the "ability to pay a fine," suggests the court envisioned Giwah having only very modest earnings. Accordingly, we remand for reconsideration of the portion of Giwah's sentence which orders restitution payments in the amount of 15% of Giwah's gross earnings.

We are cognizant of the inconvenience this remand creates for the parties and the courts. However, the government could avoid such inefficiencies by providing the sentencing judge, in open court, with a suggested rationale for imposing restitution or perhaps a suggested safety valve provision. If the sentencing judge adopts that rationale, and if that rationale reflects consideration of the § 3664 factors, then, as discussed above, the standard of appellate review is significantly more deferential, and the restitution order is more likely to survive appeal.

## C. *The Terms of the Restitution Order*

To guide the district court on remand, we also briefly address Giwah's alternative argument, that ordering payments of "at least 15%" of annual earnings is inherently improper. Giwah argues that the order must be for a "flat rate of 15%" if it is to reflect his ability to pay.

This argument is logically flawed. That the court allows Giwah to pay more than 15% of his earnings does not mean the court requires Giwah to pay more than 15%. Giwah is on the hook for the whole amount regardless of how he pays. By ordering at least 15%, the district court simply articulated what Giwah must do in order to avoid violating the terms of supervised release, pursuant to 18 U.S.C. § 3663(f) & (g), and to avoid other ramifications of failure to comply with a restitution order (such as suspension of all federal benefits pursuant to § 3663(i)).

The district court may only order a schedule of restitution payments during the five years following the conclusion of Giwah's prison term.[2] 18 U.S.C. § 3663(f)(2)(B). Ordering minimum payments during the time periods specified in 18 U.S.C. § 3663(f) clarifies what the defendant must do in order to continue to enjoy conditional liberty and other federal benefits. It is certainly in the defendant's best interests to pay the full amount ordered as quickly as possible. After that time period expires, the defendant is subject to the laws regarding the enforcement of fines and money judgments.

## III.  CONCLUSION

Giwah's prison sentence is affirmed. The restitution order is vacated and remanded for reconsideration. Any new restitution order should reflect that the district court properly

---

**2.** Notwithstanding § 3663(f)(2)(B), the defendant remains liable to the government and the victims for unpaid amounts for up to 20 years. 18 U.S.C. § 3663(h)(1) (making restitution orders enforceable by the federal government in the same manner as fines and enforceable by the victims of the crime and the government in the same manner as a civil judgment); 18 U.S.C. § 3613(b)(1) (liability for payment of fine expires after 20 years); N.Y. Civ. Prac. L. & R. 211(b) (McKinney 1990) (creating conclusive presumption that money judgments are satisfied after 20 years).

engaged in the considerations mandated by 18 U.S.C. § 3664(a).