**UNITED STATES of America, Appellee,**

v.

**Mary M. PORTER, Defendant–Appellant.**

**No. 407, Docket 95–1219.**

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1995.

Decided July 23, 1996.

---

Jonathan W. Feldman, Federal Public Defender's Office, Western District of New York, Rochester, New York, for Defendant–Appellant.

Joel Violanti, Assistant United States Attorney, Buffalo, New York (Patrick H. NeMoyer, United States Attorney, Western District of New York, Kathleen M. Mehltretter, Assistant United States Attorney, Buffalo, New York, of counsel), for Appellee.

Before: VAN GRAAFEILAND, JACOBS and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Mary Porter pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. Her plea agreement provided that "[t]he Government and defendant agree that the total loss which could be readily proven by the Government at trial against the defendant is $170,080.00." The United States District Court for the Western District of New York (Judge William Skretny) sentenced Porter to six months imprisonment, followed by three years of supervised release, and ordered her to pay a $50 special assessment. She was also ordered to pay $169,043.21 in restitution to the victims of her crime.[1] She was not ordered to pay a fine because the district court found that she was unable to do so.

Porter appeals from the order of restitution. She argues that the restitution order reflects an abuse of the district court's discretion because she lacks a current ability to pay the restitution amount and because her earning potential suggests that she will not be able to comply with the restitution order in the future. Because the district court tailored the restitution order specifically to Porter's situation and because the district court did not clearly err in considering the factors relevant to an order of restitution, we affirm.

## BACKGROUND

### I

#### A. The Defendant's Circumstances

Porter falsified authorizations for electronic money transfers while working at two

---

1. The amount of restitution ordered reflects the calculation of loss contained in the Probation Department's Pre–Sentence Report, and not the amount contained in the plea agreement.

Buffalo, New York, financial brokerage firms from 1986 to 1991. This practice resulted in the deposit of the firms' customers' money into Porter's personal checking account. She also repeatedly deposited checks intended for customers into her personal checking accounts. As a result of this conduct, her employers' customers lost approximately $170,000. Fortunately for the customers, the brokerage firms paid them back. Unfortunately for the brokerage firms, nobody paid them back. Thus, Porter's crime caused her employers (now former employers) to lose approximately $170,000.

Porter's Plea Agreement provided that "the Court may require restitution to be paid as part of the sentence pursuant to § 5E1.1 of the Sentencing Guidelines and 18 U.S.C. § 3663." To assist him in his decision relating to restitution, Judge Skretny requested additional information from Porter regarding how she spent the stolen money. Porter provided the court with a handwritten summary of the payee and the amount of approximately 100 checks which Porter wrote from 1986 to 1991. These checks total roughly the same amount of money that she stole. Porter explained that most of her regular legal income during this time, approximately $700, net, per month, went to regular household expenses (groceries, utilities, medical bills, etc.), and she therefore did not include these expenses in the summary.

According to Porter's summary of expenditures, approximately $30,000 of the money Porter stole went to pay credit card bills. There is no indication of what was purchased with these credit cards. Though Porter explains that some of these purchases were made by her husband, she provides no further substantiation of this claim. In an affidavit accompanying the summary of expenses, Porter stated that she "attempted to get copies of the actual charge card records, but my bank informed me it would take at least four to six weeks to obtain such rec-

ords." No further evidence has been provided to the court regarding what was purchased with these credit cards and by whom.

Porter's summary shows she wrote checks totalling nearly $20,000 to buy furniture and automobiles. Another $16,000 went to "pay customer[s] back." [2] Also, according to Porter's handwritten submission to the court, she wrote checks totalling at least $30,000 for her husband.

Porter explained to the district court that she was in an abusive marriage during the time she was stealing money. As police records indicate, her husband physically abused her. Furthermore, she claimed that her husband did not contribute to household expenses despite holding a full time job. Porter explained to the court that "the overwhelming majority of the funds" were used by her husband, or used by her to support her two sons. Porter gave her husband money to make him less abusive. According to Porter, her husband used this money at times to "take off to golf or go on vacations alone, which meant that he was not around to hurt me." Her husband apparently believed the money Porter stole came from an inheritance. Notwithstanding these difficult circumstances, Porter continues to acknowledge the wrongfulness of her conduct.

Porter has since divorced.[3] She is presently 37 years old. She has sole custody over one child, and joint custody over another. A Presentence Report stated that Porter's expenses exceed her income, that she was behind in her rent, and that she owed more than $10,000 in credit card bills. The Report concluded that Porter lacked the financial resources to pay a fine. The Presentence Report noted that Porter had recently applied for food stamps and rental assistance from the local Department of Social Services. The government has not challenged Porter's or the Presentence Report's account of her situation.

---

**2.** There is no further explanation of what she was paying the customer back for. The most obvious possibility is that Porter wrote these checks when she was caught misdirecting funds to her own checking account. If that is the case, then these checks should not be subtracted from the $170,-000 which she admitted she illegally obtained

and which she admitted the government could prove was lost on account of her crimes.

**3.** The defendant has since taken back her previous last name. We use her married name to be consistent with the briefings and the first appellate opinion in this case.

## B. Procedural History

This is the second time this court has reviewed an order of restitution against Mary Porter. Judge Skretny first sentenced Porter on October 27, 1993. *See United States v. Porter,* 41 F.3d 68 (2d Cir.1994) (*"Porter I "*). Porter's first sentence included an order that restitution be paid "in full immediately." Notwithstanding this language, and no doubt because of his awareness of Porter's financial condition, Judge Skretny ordered that "[e]xecution of this restitution judgment of $169,043.21 is stayed provided that the defendant makes timely installments on a schedule to be fixed by the U.S. Bureau of Prisons while incarcerated and by the U.S. Probation Office while on supervised release." Porter appealed from this order, arguing that it was "unduly harsh and an abuse of discretion." *Id.* at 69.

Two members of the panel in *Porter I* did not address the harshness of the restitution order. Instead we reversed the restitution order as an improper delegation of judicial powers and remanded for re-sentencing. *Id.* at 71. A sentencing judge may not authorize a probation officer to dictate the amount of restitution or to establish a schedule for re-payment of a restitution order. Those decisions, we held, are for judges alone.

Judge Winter, writing separately, expressed concern that Porter "cannot conceivably repay over $169,000." Judge Winter concluded that imposing such an order on a person in Porter's position "is flatly inconsistent" with what Congress had in mind when it authorized orders of restitution. *Id.* at 72. The other members of the panel did not address Judge Winter's concern, limiting the court's ruling to the impropriety of delegating judicial duties. Thus, while we are certainly cognizant of Judge Winter's concurrence, it is not binding on this panel.

On remand from this court's opinion in *Porter I,* on April 11, 1995, Judge Skretny issued the order now before us. It provides that:

Restitution shall be paid in full immediately. Execution of this restitution judgment of $169,043.21 is stayed, provided that the defendant makes timely installments at the rate of $25 per month while on supervised

release. The Court will entertain motions to modify (increase/decrease) the payment schedule if the defendant's financial situation changes.

Having conformed to the rule of *Porter I,* this order now requires us to address the question which Judge Winter discussed in his concurrence: whether ordering an apparently indigent defendant to pay more than $169,-000 in restitution but staying "execution of [that] restitution" so long as the defendant conforms to a judicially imposed payment schedule while on supervised release constitutes reversible error.

## DISCUSSION

## II

Porter admitted to the district court that she is able to pay $25 a month in restitution. That portion of the district court's order is not challenged. Porter's appeal relates to two aspects of the restitution order: (1) the district court's rejection of her explanation of the disposition of the proceeds of her crime and (2) the total amount of the restitution order. Porter's counsel timely objected to both issues.

## A. Standard of Review

■ There are two distinct, though related, stages in a district court's decision to order restitution. First, the sentencing judge must consider at least three factors before restitution can be imposed: the amount of the loss sustained by the victim of the crime, the defendant's ability to pay restitution, and the financial needs and earning ability of the defendant and the defendant's dependents. 18 U.S.C. § 3664(a). "[T]he record must demonstrate that the court has considered these factors in ordering restitution." *United States v. Broyde,* 22 F.3d 441, 442 (2d Cir.1994) (quoting *United States v. Tortora,* 994 F.2d 79, 81 (2d Cir.1993)). Where there is no evidence suggesting the district court has made such consideration, we will vacate an order of restitution and remand for resentencing. *See United States v. Tortora,* 994 F.2d 79, 81 (2d Cir.1993).

■ Once we are satisfied that these considerations have occurred, we review any findings resulting therefrom for clear error, as is generally the case in the sentencing context. *See United States v. Broderson*, 67 F.3d 452, 458 (2d Cir.1995). But the district court need not make specific findings when ordering full restitution. *United States v. Mortimer*, 52 F.3d 429, 436 (2d Cir.), *cert. denied*, ── U.S. ──, 116 S.Ct. 208, 133 L.Ed.2d 141 (1995). In fact, only if the district court declines to impose full restitution must there be a statement of reasons on the record. 18 U.S.C. § 3553(c) (1994).

■ In the absence of specific findings our task is to infer the reasons for the district court's decision to impose full restitution. This is a fuzzy task indeed, for we have noted that specific findings—except for findings as to the amount of the victim's loss—are not likely "to be of much assistance in arriving at a particular dollar amount of restitution." *United States v. Atkinson*, 788 F.2d 900, 902 (2d Cir.1986). *See also United States v. Kassar*, 47 F.3d 562, 568 (2d Cir.1995) ("[T]he defendant's resources are only one factor that must be considered" in deciding to order restitution.). The decision to order restitution is "a delicate balancing of diverse, sometimes incomparable factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a 'hunch.' " *Atkinson*, 788 F.2d at 902. Because of the nuanced nature of the decision to impose restitution it makes little sense for an appellate court, significantly more removed from the case than the district court, to scrutinize the decision closely. A district court must be given latitude in the formation of restitution orders in order to protect the victim's interests. *Kassar*, 47 F.3d at 568. Accordingly, we review the district court's decision as to the proper amount of restitution and as to the proper payment schedule for abuse of discretion.

Underlying this standard of review is Section 5.E1.1(a)(1) of the United States Sentencing Guidelines, which states that "[t]he court *shall* enter a restitution order if such order is authorized under 18 U.S.C. §§ 3663–3664" (emphasis added). Furthermore, we have stated that the purpose behind 18

U.S.C. §§ 3663–3664 is to "require restitution wherever possible." *Atkinson*, 788 F.2d at 903. As another court has noted, "full restitution remains the norm, sparing the victims the need to get a separate civil judgment. When there is doubt about ability to pay, the court should order full restitution." *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir.1993).

In sum, we review restitution orders deferentially. *United States v. Giwah*, 84 F.3d 109, 112 (2d Cir.1996).

### B. Review

There is no dispute over whether the district court reviewed the statutory factors. The question before us is the correctness of those considerations and the order which resulted.

Porter had the burden of establishing her financial condition and the needs of her dependents by a preponderance of the evidence. 18 U.S.C. § 3664(d). In an effort to persuade the court that her financial condition did not justify an order of full restitution, she presented the handwritten summary of checks described above. This summary did not persuade the district court. Judge Skretny explained at resentencing that he found the summary "almost impossible to decipher" and that "the documentation does not resolve all of the doubts." Judge Skretny reasoned that "[Porter] will have access at some point to perhaps the unaccounted for funds that in my view have not necessarily been resolved to my satisfaction."

It was this uncertainty that lead Judge Skretny to order restitution in the full amount. We have endorsed such reasoning before. *See Kassar*, 47 F.3d at 568 (affirming the imposition of a fine and restitution based on evidence of lucrative illegal activity).

■ In this case, (i) Porter illegally obtained assets from the victim of her crime, (ii) she claimed that the assets had been spent, lost, or given to her abusive former spouse, (iii) she presented evidence that, without the illegally obtained assets, she was indigent, and (iv) the district court had

doubts about whether the assets had truly been dissipated. Given Porter's burden to persuade, and the fraudulent nature of her crime, the district court's doubts about the dissipation of the stolen funds were not clearly erroneous. *Cf.* Fed.R.Evid. 609 (recognizing the relevance of previous crimes of deceit in determining credibility). We therefore hold, under these circumstances, that the district court did not abuse its discretion by ordering restitution in the full amount that Porter took from her victim. *See Atkinson,* 788 F.2d at 904 ("Although there may be little chance that it will ever be made, if full restitution is not ordered at the time of sentencing, an indigent defendant would evade the statutory purpose of making the victim whole in the event he should subsequently come into sufficient funds."). *See also Ahmad,* 2 F.3d at 247 ("When there is doubt about ability to pay, the court should order restitution.").[4]

We are therefore not presented with the extreme case in which full restitution is imposed despite a finding that the defendant lacks present means to make full restitution and has such bleak prospects for future earnings that full restitution over a five-year term is completely unrealistic. Here, the district court had a grounded suspicion that Porter might actually have the present means to make full restitution. We therefore need not resolve the controversy (within this Circuit and between others) about whether to uphold restitution penalties in such an extreme case. *Compare Atkinson,* 788 F.2d at 904 (full restitution may be ordered even though "there may be little chance that it will ever be made"), *with Porter I,* 41 F.3d at 73 (Winter, J., concurring) (*Atkinson* "did not authorize amounts that cannot be repaid without Hollywood miracles."). *Compare United States v. Ryan,* 874 F.2d 1052, 1054 (5th Cir.1989) (upholding $2.2 million restitution order against bankrupt defendant with no clear means of earning income in the future, because "a defendant's financial situation may well change in the future, making him able to pay some if not all the restitution ordered"), *with United States v. Logar,* 975 F.2d 958, 964 (3d Cir.1992) ("[I]f it is realistic that defendant may inherit a substantial sum from a well-off relative or has a story to write that will be a bestseller, then the district court would be entitled to consider these possible additional sources of income in fashioning a restitution order. On the other hand, we will not put the court in the lottery business."); *United States v. Rogat,* 924 F.2d 983, 985 (10th Cir.1991); *United States v. Mitchell,* 893 F.2d 935, 936 n. 1 (8th Cir. 1990).

Any discomfort we may have with this outcome is assuaged by other considerations. First, our inspection of Porter's list of expenditures reveals that some of the money was spent on durable goods with possible resale value. There is nothing wrong with ordering a criminal to divest herself of the fruits of her crime in order to make her victims whole. Porter risked this when she conducted her fraudulent scheme.

■ Second, ordering full restitution is not as draconian as Porter appears to believe. Porter admits to pecuniarily harming her employers. Ordering restitution in a case such as this "estop[s Porter] from denying the essential allegations" of her crime in any civil proceeding brought on account of it. 18 U.S.C. § 3664(e). Restitution orders are collectible "in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h). Once Porter's supervised release is over, the outstanding portion of the restitution order is enforceable as if it were a civil judgment.[5] If

---

**4.** In *Ahmad,* the Seventh Circuit was troubled by the apparent inconsistency between ordering full restitution and not ordering the payment of a fine. 2 F.3d at 247. Here, the restitution order is stayed, but for the payment schedule, until the expiration of supervised release. In *Ahmad,* by contrast, the district court ordered the defendant to pay restitution immediately. This difference avoids the problem of *Ahmad. See id.* at 248 ("[A] belief that a defendant will have some disposable income starting in three years would permit the court both to waive the fine and order restitution.").

**5.** This is because the district judge opted to stop the $25 per month payment schedule when Porter's period of supervised release concluded. (The court was authorized to order the schedule of payments until five years after Porter's prison term ended. 18 U.S.C. § 3663(f)(2)(B).) Where the order is silent as to a repayment schedule, then the remaining portion of the restitution or-

at that time, "immediate payment proves impossible, accommodation will occur in the course of collection." *Ahmad*, 2 F.3d at 249. Both New York and Federal law specify the nature of such accommodation by limiting the extent to which a judgment creditor can be forced to pay. *See, e.g.,* N.Y.Civ.Prac.L. & R. 5231(b) (McKinney 1978 & Supp.1996) (insulating from garnishment the greater of 30 times the minimum hourly wage per week or 75% of the judgment debtor's disposable earnings); 15 U.S.C. §§ 1671–1673 (1994) (same). The incremental effect of the restitution order before us is thus limited to facilitating the victim's civil recovery. That Porter may not be able to pay the full amount of restitution upon the expiration of her three year period of supervised release is not a sufficiently compelling reason to warrant reversal of this order. "Even an indigent defendant may be subject to the duty to pay restitution when and if funds are eventually acquired." *Mortimer*, 52 F.3d at 436. In the meantime, the district judge has devised an eminently reasonable payment schedule for the duration of Porter's supervised release. *See id.* Thereafter, the statutory protections afforded judgment debtors will continue to insulate Porter from overly draconian ramifications.

Moreover, this case is made more difficult by the fact that the criminal herself is a victim of domestic abuse, as Judge Skretny recognized in setting "a punishment that is consistent with what your particular situation will allow." The atypicalness of the criminal does not justify appellate reversal given the strong presumption in favor of full restitution. Congress has decided to protect the interests of victims of crime. Our decision here is faithful to that purpose.

We note that Judge Skretny's order suggests that he might entertain motions to change the amount of restitution ordered if there is evidence suggesting that Porter's financial condition warranted such a change. We do not decide today whether the district court has authority to modify the amount of restitution ordered in this way. Such a decision must wait for such a modification and an appeal therefrom.

der will be treated as due immediately. 18

## CONCLUSION

### III

Accordingly, the order of restitution imposed against Mary Porter is affirmed.

VAN GRAAFEILAND, Circuit Judge, concurring in the result:

Because of the peculiar factual setting in which this case comes to us, I vote to affirm. Whatever decision we make about restitution at this late date, Porter is going to end up owing close to $170,000 to her former employers and their insurance company, this despite the fact that she has been, and is, indigent. *See United States v. Ahmad,* 2 F.3d 245, 247 (7th Cir.1993).

On June 3, 1993, Porter was convicted of wire fraud following her guilty plea. She was sentenced to six months imprisonment to be followed by three years of supervised release. She also was ordered to make restitution in the full amount of the defalcation, $169,043.21. She appealed the portion of the sentence dealing with restitution, but complied with the remainder of the sentence. As of the present time, she has completed her term of incarceration and approximately two years of supervised release.

On the prior appeal, both the panel majority and the concurring judge recognized the clearly established fact that Porter was indigent. *See* 41 F.3d at 70 and 72. Because of her indigent status, she has been represented throughout the entire litigation by a Federal Public Defender. The significance of such an appointment as an "indication" of indigency has been recognized in the Sentencing Guidelines. *See* Guidelines § 5E1.2, Application Note 3; *United States v. Stevens,* 985 F.2d 1175, 1188 (2d Cir.1993). The district court waived the payment of a fine because of Porter's "inability to pay." The Federal Public Defender appointed to represent Porter was an able and conscientious lawyer who since has been appointed a Magistrate Judge. He was fully aware of his obligations as an officer of the court, particularly those of the nature imposed by Fed.R.Civ.P. 11. It is not

U.S.C. § 3663(f)(3).

surprising, therefore, that all members of the prior panel accepted as factually accurate his references to Porter's indigency in his endorsed submissions to the district court.

Indeed, in view of other evidence in the record, we could not in good conscience do otherwise. The probation officer's presentence report submitted prior to the first sentencing stated, "The defendant has no assets." Both the Government and the defendant reviewed and adopted this finding. *See* Guideline Chapter Six, Part A—Sentencing Procedures. Moreover, in the proceedings below that followed our remand, the Government acknowledged the fact that Porter was "presently indigent." Finally, the undisputed fact that Porter is receiving monthly Social Service benefits and food stamps demonstrates the Social Service officials' belief that she is in fact indigent.

I therefore respectfully but emphatically disagree with my colleagues' assertion that the district court had a "grounded suspicion" that Porter is hiding funds and that "there is nothing wrong with ordering a criminal to divest herself of the fruit of her crime in order to make the victim whole." Porter is a convicted criminal, but she also is an unfortunate woman who has suffered years of mistreatment. I have seen pictures of the bruises on her body and read the report of an examining psychiatrist. She deserves better treatment than being charged with further criminal wrongdoing based on an alleged "grounded suspicion." I have sat on two appeals in this case and have found nothing to indicate that we erred in describing Porter as an "indigent defendant," a description in which the Government consistently has concurred.

I also disagree with my colleagues' conclusion that the panel majority on the prior appeal was not concerned about the harshness of the restitution order. As a member of the panel majority, I can state categorically that the panel was as troubled as was the concurring judge by the amount of the ordered restitution, $169,043.21. Our statement that "we concur in the district court's expressed concern about the defendant's ability to make restitution," 41 F.3d at 69, was not an idle remark made simply in passing.

Our difference with the concurring judge was only as to how the unhappy situation could be remedied. The panel majority feared that if the sentencing judge made only a modest restitution award and subsequently attempted to increase it because of a change in Porter's financial circumstances, he would be confronted with a double jeopardy problem that would preclude the increase in sentence. We concluded that such increase might be made if the sentencing judge could make it clear in some way that the part of his sentence dealing with restitution was not a final order.

What the majority envisioned was "a modest restitution award that [could] be increased if the defendant's financial condition should change for the better." 41 F.3d at 71. We suggested several possible ways in which this might be accomplished and made specific reference to sections 250002 and 40113 of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, *codified as* 18 U.S.C. § 2327(d) and § 2248(d) respectively, for the district judge's consideration. We said:

> We assume that Congress included the provisions of sections 2327(d) and 2248(d) in the 1994 Act to eliminate any claims of expected finality, thus permitting a sentencing court to make a modest restitution award that can be increased if the defendant's financial condition should change for the better. Whether these provisions can be applied in the instant case, either by reference to the statutory terms or by incorporation of similar terms in the restitution order, are matters to be decided, in the first instance at least, by the district court.

41 F.3d at 71.

The district court's response to our suggestion was somewhat different than what we would have liked. The restitution portion of his amended judgment reads as follows:

> Restitution shall be paid:
>
> > in full immediately. Execution of this restitution judgment of $169,043.21 is stayed, provided that the defendant makes timely installments at the rate of $25 per month while on supervised re-

lease. The Court will entertain motions to modify (increase/decrease) the payment schedule if the defendant's financial situation changes.

Unfortunately, this provision is both ambiguous and in possible violation of the statute, 18 U.S.C. § 3663(f)(1). The stay provided therein is made contingent upon the defendant's payment of restitution installments "while on supervised release." However, the duration of the stay is not similarly limited to the period of supervised release. Moreover, the court placed no time limitation on its willingness to modify the defendant's payment schedule.

Section 3663(f)(1) provides that the court "may require that [the] defendant make restitution under this section within a specified period or in specified installments." A fair reading of this provision is that the court may fix the amount of the restitution and, having done so, may direct that the amount so determined be paid all at once or in installments. In other words, the total amount to be paid is the same, regardless of how it is paid. *See United States v. Johnson,* 48 F.3d 806, 808 (4th Cir.1995); *United States v. Dorsey,* 27 F.3d 285, 291 (7th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 949, 130 L.Ed.2d 892 (1995); *United States v. Diamond,* 969 F.2d 961, 969 (10th Cir.1992); *United States v. Stevens,* 909 F.2d 431, 435 (11th Cir.1990). In the instant case, there is no relationship whatsoever between the $25 monthly installments and the total amount to be paid.

Despite the reservations above expressed, I am reluctant to return the matter to the district court for a second time. The period during which that court may require the defendant to make restitution is limited to five years from the date of the sentence or the end of the term of imprisonment. *See* 18 U.S.C. § 3663(f)(2); *see also Diamond,* 969 F.2d at 969; *United States v. Joseph,* 914 F.2d 780, 786 (6th Cir.1990); *United States v. Bruchey,* 810 F.2d 456, 459–60 (4th Cir.1987). A substantial portion of that five-year period already has expired. I would construe the district court's order to require the $25 monthly payments to be continued, subject to possible adjustments based on changes in

Porter's financial condition, for the remainder of the five years. At the end of that time, Porter's former employers and their bonding company, if they deem it worth their while, can secure a civilly enforceable judgment for the balance owing. Although the prospect of Porter spending the rest of her life with a nondischargeable judgment in excess of $165,000 hanging over her head is not something I view with pleasure, remanding the issue to the district court for the second time will not eliminate the prospect.