108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Timothy L. BRAUNSTEIN, Defendant-Appellant.
 No. 96-1551.
 United States Court of Appeals, Second Circuit.
 March 26, 1997.
 
 APPEARING FOR APPELLANT: F. Timothy McNamara, Hartford, Conn.
 APPEARING FOR APPELLEE: Gates Garrity-Rokous, Asst. U.S. Atty., New Haven, Conn.
 Present NEWMAN, C.J., MINER and GODBOLD,*, Circuit Judges.
 
 SUMMARY ORDER
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
 
 
 3
 Timothy L. Braunstein appeals from the August 7, 1996, judgment of the District Court following his guilty plea to one count of theft of government property in violation of 18 U.S.C. § 641. The judgment imposed a sentence that included a term of probation and an order of restitution in the amount of $91,807.80. The District Judge ordered Braunstein to pay $50,000 of the required restitution within sixty days of the entry of judgment, and to pay the remaining $41,807 in monthly installments of $890 each month beginning in January 1997. The sole issue on this appeal concerns the propriety of the Court's scheduling of the required restitution payments. Specifically, Braunstein contends that the Court should not have taken into account the proceeds derived from the sale of shares in a corporation owned by his wife in setting the defendant's schedule of repayment.
 
 
 4
 1. Although neither the District Court nor Braunstein discuss the point, it is the recently amended version of the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 et seq., that governs the restitution order in this case. Section 211 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. No. 104-132, § 211, 110 Stat. 1214 (1996), provides that the new VWPA amendments apply to sentencing proceedings in cases where the defendant was convicted on or after April 24, 1996, and Braunstein entered a plea of guilty on May 1, 1996.
 
 
 5
 2. Braunstein first contends that the District Court erred as a matter of law in considering his wife's financial resources when setting the schedule of repayment because the VWPA restricts a sentencing court to the consideration of only the defendant's own financial resources. This argument must be rejected pursuant to the plain language of section 3664(f)(2)(A), which provides that the sentencing court shall specify "the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled." 18 U.S.C. § 3664(f)(2)(A) (as amended) (emphasis added). As long as the monetary payments received, and to be received for the next five years, by Braunstein's wife in consideration for the sale of her one-half share of Post Productions, Inc. are or will be jointly controlled by the two Braunsteins, these payments can be considered as "financial resources and other assets" of Braunstein within the meaning of the VWPA, and the District Court could properly consider the proceeds realized from the sale of Mrs. Braunstein's share of the corporation in scheduling the repayment of the restitution owed by Braunstein.
 
 
 6
 3. Braunstein alternatively argues that even if a sentencing court could theoretically consider assets jointly controlled by a defendant and his wife in setting a schedule for repayment of restitution, the District Court erred in doing so in this case because there is no evidence that the $315,000 that Mrs. Braunstein will eventually gain from this transaction is in any way "jointly controlled" by her and Braunstein. The defendant points out that although the sale of the corporation resulted in a cash payment of approximately $75,000 in July 1996 to Mrs. Braunstein and entitles her to receive more than $4,000 each month for the next five years, beginning in January 1997, these financial assets have nothing to do with Braunstein's own ability to pay the scheduled restitution amounts because they are not owned or controlled by him.
 
 
 7
 Section 3664(e) provides that "[t]he burden of demonstrating the financial resources of the defendant ... shall be on the defendant." 18 U.S.C. § 3664(e); see United States v. Khan, 53 F.3d 507, 519 (2d Cir.1995). The District Court's ruling that Braunstein failed to establish by a preponderance of the evidence that the payments received by his wife are owned and controlled solely by her, and its finding that these payments are in fact jointly controlled by the defendant and his wife, and could therefore be considered in setting the schedule for repayment of restitution, are reviewed by this Court for abuse of discretion. See United States v. Giwah, 84 F.3d 109, 114 (2d Cir.1996).
 
 
 8
 Braunstein relies solely on the undisputed fact that the one-half share in Post Productions sold in July 1995 was held in the name of Mrs. Braunstein and that all payments generated by that sale have been and will be formally made out in her name. Braunstein offers nothing further, however, to show that the proceeds of the sale would be entirely unavailable to him or would be controlled solely by Mrs. Braunstein. Indeed, he conceded at the sentencing hearing that he generally shares his financial resources as well as his expenses with Mrs. Braunstein, and did not contest the Government's claim that his wife's assets would be available to meet the living expenses of the family. Braunstein's attorney conceded in response to the District Judge's hypothetical questioning that the proceeds from the sale of the shares in the corporation would be treated as marital property if the couple were to become divorced in the future.
 
 
 9
 Moreover, the Government presented much evidence to show that Braunstein and his wife jointly controlled the one-half share in the corporation prior to the July 1995 sale, and that the couple will jointly control the proceeds derived from that sale. Mrs. Braunstein's "sole" ownership of the one-half share was a sham, and both the husband and the wife exercised control over this asset and will jointly enjoy the proceeds resulting from its disposition. Testimony from the attorney handling the sale of the one-half share, for instance, indicated that both Braunsteins signed the necessary closing documents for that sale, and that Braunstein even signed a non-compete agreement in connection with the sale, which increased the price of the Braunsteins' one-half share by approximately $65,000. Moreover, an employee of Post Productions testified that although Mrs. Braunstein handled only minor bookkeeping chores, Braunstein played an essential role in the operation of the business and made all the major decisions at the corporation. Braunstein also could not explain how Mrs. Braunstein was able to supply the capital originally required to fund the one-half share of Post Productions ostensibly owned by her, or how this share was otherwise originally funded. Finally, Braunstein admitted in his plea agreement that he "earned approximately $180,000 from early 1992 through July 1995 while working in his own company," i.e., Post Productions, but reported the majority of this income to the Social Security Administration and the IRS using Mrs. Braunstein's name and social security number.
 
 
 10
 As the District Court stated, the evidence thus showed that "the financial picture of the [Braunstein] family's resources is a blurred one" and that the Braunsteins deliberately used "the legal nicet[y] of declaring one person to be the sole shareholder in what is undisputedly at a minimum a joint enterprise" in an attempt to evade and circumvent the consequences of various legal rules. "Given the whole complexion of using the wife to cover for the husband as to who was earning what ..., [and given the] long-standing record here of the shilly-shallying around with the husband's and the wife's assets," the District Court properly concluded that it could look to "the financial earning ability of the defendant's dependents and other factors, including the money that will be coming in from the sale of this company" in setting the schedule for repayment of restitution because the proceeds of the sale, like the asset sold, would be jointly controlled by Braunstein and his wife. Because the Braunsteins received a $75,000 cash payment in July 1995 and will receive more than $4,000 each month for the next five years, beginning in January 1997, as proceeds from the sale, and because Braunstein himself will receive Social Security disability benefits of approximately $1,800 each month, the Court's order that Braunstein (i) pay $50,000 within six months of the entry of judgment, and (ii) pay $890 each month beginning in January 1997, was not an abuse of discretion.
 
 
 11
 4. Finally, we note that application of the amended version of the VWPA to this case does not violate the Ex Post Facto prohibition. Braunstein's punishment has not been enhanced; we would reach the same result even if we applied the prior version of the VWPA. Former section 3664(a), for instance, allowed the sentencing court to consider "the financial resources of the defendant ... and such other factors as the court deems appropriate " in imposing a restitution order. 18 U.S.C. § 3664(a) (preAEDPA) (emphasis added). The proceeds derived from the sale of assets controlled, in reality, by both Braunstein and his wife could have been properly considered by a sentencing court even prior to the 1996 amendments in setting Braunstein's schedule for repayment of restitution.
 
 
 
 *
 Of the United States Court of Appeals for the Eleventh Circuit, sitting by designation