**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Mark J. GIUFFRIDA,**
**Defendant/Appellant.**

**Criminal No. 2:98–00095.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 17, 1999.

Michael Keller, Assistant United States Attorney, Southern District of West Virginia, Charleston, WV, for plaintiff.

Edward H. Weis, Assistant Federal Public Defender, Southern District of West Virginia, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant below, Mark J. Giuffrida's appeal from the ruling of the Magistrate Judge setting the amount of restitution due following his conviction for violation of 18 U.S.C. § 228, previously denominated the Child Support Recovery Act of 1992 ("CSRA"), but amended and renamed the Deadbeat Parents Punishment Act of 1998 ("DPPA"). For reasons discussed more fully below, the Court **AFFIRMS** the ruling of the Magistrate Judge.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Giuffrida is the father of twins, born July 16, 1992, whose mother, Dee Anne Wolfe, returned with the children to West Virginia after her relationship with Giuffrida dissolved. On October 20, 1995 the Wayne County West Virginia Circuit Court ordered Giuffrida to pay $778 per month in child support to Wolfe from June 1, 1995 as well as retroactive support of $573 per month to Wolfe from June 1, 1994 through June 1, 1995. The circuit court order stated, "Until such time as the child support payments are withheld from the respondent's check, he shall pay the same to the Child Advocate Office directly." (Supplemental J.A. 2.)

On April 28, 1998 Giuffrida was charged in a single-count indictment with a violation of the CSRA, which proscribes the willful failure to pay a support obligation with respect to a child residing in another state. During a bench trial before a Magistrate Judge on September 14, 1998, with a recess to October 6, 1998, the Magistrate Judge heard testimony from two female friends with whom Giuffrida had romantic relationships and a male colleague; the three testified about child support payments ostensibly sent by Giuffrida directly to Wolfe. The Magistrate Judge found Giuffrida guilty of the charge in the indictment. After a sentencing hearing on April 1, 1999, the Magistrate Judge entered a Judgment in a Criminal Case on April 5, 1999.[1]

Giuffrida was sentenced to five years' probation and required to pay restitution in the amount of $34,080.28 at the rate of $150.00 per month. The restitution amount was set in accord with the calculations of the West Virginia Child Advocate Office ("CAO") and presented in the presentence report prepared by the probation officer.

Giuffrida now appeals the Magistrate Judge's reliance on the state agency figure to set the restitution amount and his refusal to give credit for amounts testified to as having been paid, which he estimates equaled $6000.00. Giuffrida argues the Magistrate Judge erroneously believed he was

---

**1.** The judgment was amended on April 6, 1999 to reflect Defendant's overpayment of the special assessment. Giuffrida timely no-
ticed his appeal from the amended judgment on April 16, 1999.

bound to accept the state agency calculations of the West Virginia CAO as establishing the amount of restitution due. The Magistrate Judge, however, did not rule that he was *bound* to accept agency calculations. Rather, he simply stated that he did accept them and was not willing to relitigate amounts not paid in accordance with the state court order.[2]

Substantial authority, decided under the pre-amendment law, supports the Magistrate Judge's position. This Court, therefore, must consider first, if the CSRA or the DPPA should be applied in this case. If the DPPA controls, the Court must then decide whether amendment of the CSRA alters pre-amendment interpretations or whether that authority still controls restitution issues under the DPPA.

## II. DISCUSSION

The Magistrate Judge's determination that 18 U.S.C. § 228 does not authorize relitigation of the child support obligations determined by competent state authorities constitutes a legal conclusion reviewed *de novo* on appeal.

### A. Post-amendment Statute, DPPA, Applies

■ Absent an express directive from Congress, courts must apply a newly enacted statute to pending cases unless doing so would give the statute "retroactive effect." *Alexander S. v. Boyd,* 113 F.3d 1373, 1387 (4th Cir.1997) (citing *Landgraf v. USI Film Prods.,* 511 U.S. 244, 277, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("[A]

court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary")). If application of the new statute would have retroactive effect, then "our traditional assumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. However, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Id.* at 269, 114 S.Ct. 1483. Rather, application of a new statute to a pending case has a retroactive effect only when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. 1483. That is, a court must determine "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70, 114 S.Ct. 1483.

■ Congress amended 18 U.S.C. § 228 on June 24, 1998, prior to Giuffrida's conviction and sentencing.[3] The act as amended, the DPPA, provides for restitution as follows: "Mandatory restitution. Upon a conviction under this section, the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(d).[4]

---

**2.** The Magistrate Judge stated:

As the government has pointed out, the basic obligation was that the defendant's to pay the amount that was ordered by the Wayne County Court. I'm not going to speculate or estimate that he's paid any amount outside that payment that he was directed to do. I think he probably has. But as a matter of precedent, I'm not going to get into relitigating what's been paid when it goes outside the order of the Court as to how he should have paid it.

I'm going to accept the figure that's given to us by the state court and suggest that Mr. Giuffrida, if he wanted to challenge it, should have challenged it in the state court,

offered his evidence over there, and tried to see if he could get that changed. I'm going to accept the figure of $35,080.28. [Correct figure is $34,080.28].
(J.A. 163.)

**3.** No effective date is given nor does the statute contain any directive about its application. Accordingly, the statute takes effect at enactment.

**4.** Neither party noted the amendment. Thus, the parties' briefs do not address the alterations of the law. The portions of the previous statute which the parties address and on which they rely provided:

The amended statute defines "support obligation" as "any amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living." 18 U.S.C. § 228(f)(3). The amendment clarified that restitution is mandatory, but slightly altered the portion of the law applicable to restitution. Previously the restitution amount ("past due support obligation") was defined as the amount determined under a court order or an administrative process. "Support obligation" is now equated with the amount determined under a court order or administrative process, but the court must order restitution in the amount of the *total unpaid* "support obligation."

In effect, the amendment simply rearranges portions of the existing law. Previously, restitution was the amount unpaid for more than a year as determined, *inter alia*, under a court order; in the amendment, the first requirement was made an element of the crime and the "total unpaid" now appears in the restitution subsection. No legislative history accompanied passage of the bill, Pub.L. 105–187, which might have suggested Congress's intention to substantively alter restitution calculation, making it a function of the

sentencing court to look beyond the State court order.

Under the statute as amended restitution is imposed under section 3663A, which references the procedures of section 3664.[5] Courts have generally recognized "the purpose behind 18 U.S.C. §§ 3663–3664 is to require full restitution wherever possible." *United States v. Mattice*, 186 F.3d 219 (2nd Cir.1999) (quoting *United States v. Porter*, 90 F.3d 64, 68 (2nd Cir.1996) (citation and internal quotation marks omitted)). Further, "full restitution remains the norm, sparing the victims the need to get a separate civil judgment. When there is doubt about [Defendant's] ability to pay, the court should order full restitution." *Id.* (quoting *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir.1993)). Consideration of a defendant's ability to pay is provided under 18 U.S.C. §§ 3664(a) and (d)(3). The post-amendment statute requires a court to order restitution of the "total unpaid" support obligation. 18 U.S.C. § 228(d). This simply iterates and reinforces the prior understanding that restitution should be made in full.

Accordingly, the Court holds that the 1998 amendment of 18 U.S.C. § 228, the DPPA, did not alter the statutory requirements on a court considering a restitution order. Because the DPPA does not effect a substantive change in the legal consequences for Defendant's pre-amendment

---

(c) Restitution. Upon a conviction under this section, the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing.

(d) Definitions. As used in this section—

(1) the term "past due support obligation" means any amount—

(A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and

(B) that has remained unpaid for a period longer than one year, or is greater than $5000....

18 U.S.C. § 228(c), (d) (1997) (amended June 24, 1998).

Restitution orders under section 3663 are discretionary; under section 3663A such orders are mandatory. Both sections provide that orders thereunder should be issued and enforced in accordance with section 3664. 18 U.S.C. §§ 3663(d), 3663A(d).

5. *See supra* note 4. Under section 3664 a court exercises its discretion in fashioning a restitution order. 18 U.S.C. § 3664(a). Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. 18 U.S.C. § 3664(e). An appeals court reviews a court's exercise of discretion for abuse thereof. Because the Magistrate Judge properly relied on the state court order, however, this Court need not examine the Magistrate Judge's rulings under this standard.

conduct, the Court applies the DPPA, in effect at the time of Giuffrida's conviction and sentencing.

### B. Child Support Restitution Under 18 U.S.C. § 228, DPPA

Courts reviewing the pre-amendment CSRA have consistently held a Defendant charged with failure to pay a past due support obligation under 18 U.S.C. § 228 cannot relitigate the validity of the state support order. *United States v. Bailey*, 115 F.3d 1222, 1232 (5th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998) ("A CSRA prosecution turns only on the defendant's violation of a state court order. It does not turn on the fairness of the order, the reasons underlying the state court's issuance of the order, the defendant's relationship with his children or former spouse, or any other matter involving relitigation of a family law issue."); *United States v. Williams*, 121 F.3d 615, 620 (11th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1398, 140 L.Ed.2d 656 (1998), (CSRA "does not require federal courts to issue, modify, or otherwise consider divorce, alimony and child custody or support decrees"); *United States v. Bongiorno*, 106 F.3d 1027, 1033–34 (1st Cir.1997) ("[T]he CSRA comes into play only after a state court issues a child support order, and it does not authorize a federal court to revise the underlying decree."); *United States v. Brand*, 163 F.3d 1268 (11th Cir.1998) (same).[6]

■ Appellant responds, however, that the Wayne County Circuit Court order does not preclude Giuffrida from making child support payments directly to Dee Anne Wolfe. Although the order states, "Until such time as the child support payments are withheld from the respondent's check, *he shall pay the same to the Child Advocate Office directly*" (emphasis added), Appellant points out the CAO did credit Giuffrida with payments of $2850.00 which he made directly to Wolfe and she

subsequently reported to the CAO. While Giuffrida was fortunate that Wolfe reported these sums and the CAO gave him credit, nothing in the state court order provides for this favorable treatment. By its terms the order requires, for practical reasons now apparent to Appellant, that non-garnisheed payments shall be made directly to the CAO. Had Giuffrida obeyed the state court order and made payments directly to the CAO, the administrative accounting would reflect those payments. Having failed to obey the order, Appellant cannot now question those accounts.

Under the established interpretation of 18 U.S.C. § 228, a court need not look beyond or behind a state court order. Because amendment of the statute did not alter the substantive effect of the law, that interpretation is still accurate. The Magistrate Judge correctly refused to consider payments not made within the terms of the controlling state court order.

### III. CONCLUSION

Accordingly, the Court **AFFIRMS** the ruling of the Magistrate Judge setting the amount of restitution owed by Defendant under 18 U.S.C. § 228. This case shall be **DISMISSED** and stricken from the docket.

The Clerk is directed to send a copy of this Order to counsel of record.

---

6. *But see United States v. Lewis*, 936 F.Supp. 1093, 1101–03 (D.R.I.1996) (concluding that "the CSRA does allow relitigation of the merits of the underlying state court order" and reasoning the statute was ambiguous on this point).