**UNITED STATES of America, Appellee,**

v.

**Hassan KASSAR, a/k/a Hassan Alkassar, Defendant–Appellant.**

**No. 261, Docket 94–1084.**

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1994.

Decided Feb. 13, 1995.

Marjorie M. Smith, New York City (The Legal Aid Soc., Federal Defender Div., Appeals Bureau, of counsel), for defendant-appellant.

Paul T. Weinstein, Asst. U.S. Atty. for the E.D.N.Y., Brooklyn, N.Y. (Zachary W. Carter, U.S. Atty. for the E.D.N.Y., David C. James, Asst. U.S. Atty. for the E.D.N.Y., of counsel), for appellee.

Before: MESKILL, MAHONEY, and McLAUGHLIN, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Hassan Kassar appeals from a judgment entered February 14, 1994 in the United States District Court for

the Eastern District of New York, Reena Raggi, *Judge*, that convicted Kassar, following his guilty plea, of the use of unauthorized access devices in violation of 18 U.S.C. § 1029, and sentenced him to a prison term of sixteen months, three years of supervised release, $34,600 in restitution, a $2,000 fine, and the mandatory special assessment. The court also ordered that at the completion of his sentence, Kassar be delivered to the custody of the Immigration and Naturalization Service (the "INS"), that he be deported, and that he not reenter the country illegally.

On appeal, Kassar challenges: (1) the district court's departure from a Criminal History Category ("CHC") level I to level III on the basis of Kassar's previous conviction for commission of the same crime in the United States District Court for the Eastern District of Tennessee; (2) the imposition of a fine and restitution in spite of a finding of indigence in Kassar's Presentence Investigation Report ("PSR"); and (3) the order that Kassar be deported.

For the reasons that follow, we affirm the judgment of the district court in all respects, except that we vacate and remand regarding the sentencing provision that delegated the determination of installments for the payment of the fine and restitution to the probation department.

## Background

Kassar, a citizen of Syria and a nonresident alien, acted as an intermediary to place three-way calls among Israel, the United States, and Arab countries, using stolen credit card numbers. Kassar's customers placed calls to him at his Brooklyn apartment from Israel's Gaza Strip, and he forwarded these calls to their destinations in Arab countries. The value of the calls placed between June 3 and June 18, 1993 totalled $34,600. Kassar pled guilty to the charge of using unauthorized access devices with respect to these calls in violation of 18 U.S.C. § 1029(a)(2).

In March 1993, Kassar had pled guilty to violating the same statutory provision in the United States District Court for the Eastern District of Tennessee. As in New York, Kassar had used stolen credit cards to place long distance telephone calls. Kassar waived his right to have a PSR prepared in the Tennessee case, and the court sentenced him immediately after accepting his guilty plea. Finding that a total offense level of eleven applied (requiring a sentence of eight to twelve months), the court departed downward, sentencing Kassar to thirty-six days time served and restitution in the amount of $66,122.68 (for which he was jointly and severally liable with a codefendant), on the understanding that Kassar would face deportation proceedings immediately. Within two weeks, however, Kassar gained his release from the INS by posting a $25,000 bond, and he has failed to pay the restitution ordered in that case. A deportation hearing has not yet taken place.

In sentencing Kassar in this case, the district court accepted the PSR's calculation of an offense level of ten. The court did not agree, however, with the PSR's recommendation that a CHC of I should apply. The court noted that Kassar's low CHC resulted from the Tennessee court's downward departure, which was granted on the "erroneous assumption" that Kassar would be deported. Calculating Kassar's CHC on the basis of the sentence that he would have received had the Tennessee court not departed downward, and considering that the New York crime was committed during what should have been a term of supervised release, the court determined that Kassar should receive four CHC "points" under USSG § 4A1.1, resulting in a CHC of III. Accordingly, "looking at [Kassar's] real history," the court departed upward to CHC III.

The court also stated:

Separate and apart from that, there would be grounds for upward departure because of the similarity of the two crimes. That is something not taken into account with the single point, just as the guideline commentary indicates that it is appropriate sometimes when the same kind of crime is committed over and over again, for the court to consider propensity.

I would find that an independent grounds for upward departure. As I said, I might even consider it grounds for further departure.

But I want the record to be clear that on either basis, either the more accurate view of the simple felony history in Tennessee, or the fact that the two crimes are so similar, I would depart up to level three.

The court then sentenced Kassar to sixteen months imprisonment, the high end of the applicable ten to sixteen month range, and a three year term of supervised release.

Turning to whether a fine and order of restitution should be imposed, the court disregarded the PSR's determination that Kassar was indigent and accordingly unable to pay a fine, observing that:

> I have no idea where your assets are. But I have every reason to think from the scheme that you conducted that you profited from it.
>
> . . . .
>
> . . . I imposed the fine and the order of restitution—because I simply don't believe your statements that you don't have any money. You may not have any money in this country. But I do not believe that you were engaged in these schemes without profiting from them.

The court imposed a fine of $2,000 and restitution to AT & T in the amount of $34,600, both payable pursuant to a schedule "to be set by the probation department."

Finally, the judgment provided that following his sentence, Kassar "is to be delivered to the [INS] for deportation, is to be deported by the [INS], and . . . may not re-enter the United States illegally."

This appeal followed. After oral argument at this appeal, we were advised by the government by letter dated October 11, 1994 that Kassar had completed his term of imprisonment on September 28, 1994, had been released to the custody of the INS for deportation proceedings, and had thereafter been released on a $15,000 bond posted by a surety.

**Discussion**

**A. The Upward Departure in Criminal History Category.**

■ Counsel have raised the issue whether Kassar's challenge to his term of imprisonment may be moot in light of his recent completion of that sentence. Kassar contends that his challenge is not moot, because his CHC calculation would be affected if he is ever convicted of another crime. *See* USSG § 4A1.1(a) & (b) (imposing three CHC points for a prior sentence of more than thirteen months and two CHC points for a prior sentence of thirteen months or less but at least sixty days). We agree with Kassar that because of this collateral consequence, his challenge is not moot. *See United States v. Chavez–Palacios*, 30 F.3d 1290, 1293 (10th Cir.1994); *United States v. Fadayini*, 28 F.3d 1236, 1241 (D.C.Cir.1994); *United States v. Dickey*, 924 F.2d 836, 838 (9th Cir.), cert. denied, 502 U.S. 943, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991).[1]

■ USSG § 4A1.3 permits departure from a CHC if "reliable information indicates that the [CHC] does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." In support of his contention that the district court erroneously departed upward from CHC I to III, Kassar first argues that had the Tennessee court not departed from a base offense level of eleven on the basis of his impending deportation, it might have done so by concluding that Kassar played a minor or minimal role in the Tennessee offense. Accordingly, he contends, Judge Raggi improperly used a base offense level of eleven in ascertaining what the Tennessee sentence should have been. The government responds that there is no basis to conclude that the Tennessee court deemed Kassar to be a minor or mini-

---

**1.** *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), is not to the contrary. This pre-Guidelines case held only that defendants who had completed their terms of state court imprisonment for parole violations could not mount a habeas challenge to that imprisonment when they did not contest the occurrence of the parole violations that resulted in imprisonment, and any future collateral consequences were conjectural and depended primarily upon the occurrence of the violations rather than upon the consequent imprisonment. *See id.* at 630–34, 102 S.Ct. at 1326–28.

mal participant in the Tennessee violation,[2] and notes that the parties agreed at the Tennessee sentencing hearing that a base offense level of eleven applied.

Because the Tennessee sentencing hearing transcript is so brief, it is reasonable to conclude that the court's sentencing decision had been discussed with the parties off the record prior to the actual sentencing. Given that Kassar knew that the court would depart downward and sentence him to time served, he presumably had no reason to object to a finding that the appropriate base offense level was eleven, or to raise the issue whether he might qualify for relief as a minor or minimal participant. On the other hand, the offense conduct in both New York and Tennessee resulted from an identical *modus operandi*, on the basis of which the PSR in this case accorded Kassar a two-level enhancement for more than minimal planning, an enhancement that Kassar has conceded to be applicable to his Tennessee offense. *See supra* note 2. It is difficult to square this finding and concession with a claim of a minor or minimal role in the Tennessee offense.

■ In any event, Judge Raggi provided a sound alternative rationale in support of the upward departure. We review a district court's finding that a CHC does not adequately reflect the seriousness of a defendant's criminal history for clear error, *see United States v. Sturgis,* 869 F.2d 54, 57 (2d Cir.1989), and the scope of the upward departure for reasonableness. *See United States v. Thomas,* 6 F.3d 960, 967 (2d Cir. 1993). Given that Kassar committed the identical crime in New York shortly after committing that crime in Tennessee, the district court was clearly entitled to conclude that he was a recidivist whose low CHC did not reflect his propensity to continue on a course of criminal activity.

With respect to the scope of the departure, Kassar contends that the court impermissibly "leap-frogged" from CHC I to III, rather than consider a departure to CHC II. He notes this circuit's rule that district courts must proceed sequentially, or step-by-step, through the CHC levels when making a multi-level departure, explaining why each level is rejected. *See United States v. Deutsch,* 987 F.2d 878, 886–88 (2d Cir.1993); *United States v. Stevens,* 985 F.2d 1175, 1185 (2d Cir.1993). More recently, however, we have called this rule into question, noting that so long as the reasons supporting a departure are fully explained, a mechanistic step-by-step procedure is not required. *See United States v. Mora,* 22 F.3d 409, 413 (2d Cir. 1994); *United States v. Harris,* 13 F.3d 555, 558–59 (2d Cir.1994); *Thomas,* 6 F.3d at 964–67.

The district court's explanation in this case certainly informed Kassar of the reason for his sentence and provided an ample basis on which we can review the departure. While the district court did not explicitly state why CHC II was rejected, the reasons were implicit under both approaches taken by the court in reaching CHC III. With respect to the court's primary rationale, the CHC was justified with reference to the criminal history points that underlie it. By viewing the Tennessee sentence as it should have been, the court determined precisely what the New York sentence should be. CHC II was rejected because the proper number of points resulted in CHC III.

Under the alternative rationale, the court made clear its determination that Kassar's conduct demonstrated a definite propensity to commit the crime for which he had previously been convicted. The court noted his refusal to "get it in terms of what [brought him] before the courts of the United States," calling him a "repeated thief" whose en-

---

**2.** Kassar's main appeal brief asserts that "Kassar's role in the Tennessee offense was concededly minor if not minimal," *see* USSG § 3B1.2, and supports this claim by cross-referencing to an earlier footnote in that brief. The footnote, however, is a reconstruction of the computation of the Tennessee offense level of eleven that makes no reference to a minor or minimal role for Kassar, and acknowledges that he was probably accorded a two-level increase in offense level for more than minimal planning pursuant to USSG § 2B1.1(b)(5)(A). Kassar pointed at oral argument to a comment by Judge Raggi at sentencing which, read in context, establishes only that she accepted *arguendo* Kassar's proffer that he played a minor role in the Tennessee criminal activity.

hanced sentence was still "inadequate to deal with the severity of [his] conduct." Moreover, the court stated its "very strong[ ]" view that Kassar's criminal history category should be enhanced because he "showed no respect for the laws of this country, and indeed, has flouted them, despite being given a benefit once on the exact same criminal conduct," so that an unenhanced sentence would "violate what the guidelines are really about, which is accurately measuring this conduct as compared with others who may be similarly situated."

Because the district court specifically, and indeed emphatically, explained the basis for its departure to CHC III, its rationale for skipping CHC II is readily apparent. Under these circumstances, the district court's proceeding directly from CHC I to III did not constitute error. Moreover, we share the district court's indignation that Kassar committed the exact same crime of which he had been so recently convicted, and hold that the scope of the upward departure was reasonable.

## B. *The Fine and Restitution.*

 Kassar argues that the district court improperly imposed a fine and ordered restitution. With respect to the fine, USSG § 5E1.2(a) provides that: "The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." The defendant bears the burden of showing that he cannot pay a fine, but may meet that burden by an independent showing or by reference to the PSR. *United States v. Rivera*, 22 F.3d 430, 440 (2d Cir.1994). While a sentencing court may not base the imposition of a fine on mere suspicion that the defendant has funds, it should not uncritically accept a defendant's representation that he has no assets. *Id.* Moreover, "an inference that a defendant has funds may be drawn from circumstantial evidence." *United States v. Wong*, 40 F.3d 1347, 1383 (2d Cir.1994). Specifically, "evidence of lucrative illegal activity can support a judge's finding that a defendant is able to pay a fine levied against him." *United States v. Orena*, 32 F.3d 704, 716 (2d Cir.1994) (citing *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994)).

In this case, the PSR determined that Kassar "appear[ed] to be unable" to pay a fine because of lack of assets and large debts, including the Tennessee order of restitution. In addition, Kassar is represented by assigned counsel, a " 'significant indicator[ ] of present inability to pay any fine.' " *Stevens*, 985 F.2d at 1188 (quoting USSG § 5E1.2, comment. (n. 3)) (alteration in *Stevens* ). Kassar contends that he has thus established his indigence by reference to the PSR. He also argues that his sentence was based upon impermissible speculation, invoking *Stevens*. In *Stevens*, the district court stated that it was " 'willing to bet if [the probation officers] scratch hard enough, they will find [that the defendant] ... does have funds,' " 985 F.2d at 1188 (quoting transcript of district court proceedings) (ellipsis in *Stevens*, other alterations added), and noted that drug dealers generally make and hide large amounts of money. *Id.* We reversed and remanded for resentencing because a court may not simply presume that funds are available to pay a fine. *Id.*

The government argues that in this case, unlike *Stevens*, the PSR contains sufficient evidence for the district court to have concluded that Kassar profited from his fraudulent scheme: Kassar rented at least two apartments for this operation and obtained telephone service in his own name and under an alias; he received approximately $1.00 to $4.00 per minute for each fraudulent call that he placed; and at least $9,000 of the proceeds, representing his share, were wired to Kassar in New York from the Middle East. In addition, Kassar was able to post a $25,000 bond to secure his release from the INS after his conviction in Tennessee, although he has failed to pay the restitution ordered in Tennessee.

Judge Raggi articulated the basis for imposing a fine and restitution by stating: "I imposed the fine and the order of restitution—because I simply don't believe your statements that you don't have any money. You may not have any money in this country. But I do not believe that you were engaged

in these schemes without profiting from them."

It would have been preferable for the court to have elaborated somewhat upon the information in the PSR that supported this evaluation. Unlike *Stevens*, however, the district court did not engage in general speculation about the profitability of drug dealing to support a $2,000,000 fine, but rather made specific reference to the "schemes" that Kassar conducted, concerning whose profitability there was ample information before the court, to support the imposition of a modest $2,000.00 fine. Bearing in mind that circumstantial evidence may support an inference that a defendant has funds, *Wong*, 40 F.3d at 1383, and specifically that evidence of "lucrative illegal activity" may provide such support, *Orena*, 32 F.3d at 716, we affirm the imposition of a fine upon Kassar.

Turning to the order of restitution, USSG § 5E1.1 incorporates 18 U.S.C. § 3664(a), which requires the court to consider, when deciding whether to impose restitution: the victim's loss, the defendant's financial resources, the financial needs and earning ability of the defendant and his dependents, and any other factors deemed appropriate. Further, as we stated in *United States v. Broyde*, 22 F.3d 441 (2d Cir.1994): " 'Although the court need not set forth its findings in detail, the record must demonstrate that the court has considered these factors in ordering restitution.' " *Id.* at 442 (quoting *United States v. Tortora*, 994 F.2d 79, 81 (2d Cir.1993)).

Kassar contends that the district court did not consider his financial resources and erred in supposing that he has assets. The district court's discussion of Kassar's assets, however, indicates that it considered his resources. Moreover, as discussed above, we believe that the district court was entitled to draw an inference that Kassar has assets, based upon the available circumstantial evidence.

Moreover, while § 5E1.2(a) states that a fine shall be imposed *except* where the defendant cannot pay, § 3664(a) contains no similar bar to imposing restitution. Rather, the defendant's resources are only one factor that must be considered. *See United States v. Atkinson*, 788 F.2d 900, 902 (2d Cir.1986)

("Like other aspects of sentencing, restitution orders require an exercise of discretion ..., and this requires a delicate balancing of diverse, sometimes incomparable factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a 'hunch.' "). Indeed, a district court must have a certain amount of leeway when imposing restitution because of the victim's interests. We accordingly affirm the order of restitution.

Although we affirm the amount of the fine and restitution, we remand for resentencing because the district court impermissibly delegated to the probation department the determination of the schedule of installment payments for the fine and restitution. While an installment schedule may be set, *see* 18 U.S.C. §§ 3572(d), 3663(f)(1) (permitting court to provide for payment in installments of fine and restitution, respectively), we recently held with respect to restitution, subsequent to the entry of the judgment on appeal in this case, that the district court may not "authoriz[e] a probation officer to make post-sentencing decisions as to either the amount of the restitution or the schedule of installment payments .... [because the district court] cannot delegate the judicial functions inherent in the grant of restitution to the probation department." *United States v. Porter*, 41 F.3d 68, 71 (2d Cir.1994) (citations omitted). The statutory language of §§ 3572(d) and 3663(f)(1) identically impose upon the "court" the responsibility for determining installment payments; we accordingly hold that the *Porter* rule applies to fines as well as orders of restitution.

### C. The Deportation Order.

Kassar correctly contends that while the district court was entitled to order him into the custody of the INS, it lacked authority to order the INS to deport him; the decision to deport rests in the sound discretion of the Attorney General. 8 U.S.C. § 1251; *United States v. Olvera*, 954 F.2d 788, 793 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 3011, 120 L.Ed.2d 885 (1992). Because such an order is simply not binding, however, the error is harmless; the order is

deemed a recommendation. *Olvera*, 954 F.2d at 793–94.

### Conclusion

We affirm the judgment of the district court in all respects, except that we vacate and remand regarding the sentencing provision that delegated the determination of installments for the payment of the fine and restitution to the probation department.