**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

OCTAVIO DOMINGUEZ-CARMONA,

    Defendant-Appellee.

No. 97-2197

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JORGE HERNANDEZ-VILLANUEVA,

    Defendant-Appellee.

No. 97-2202

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.

JOSE RUBIO-LOYA,

    Defendant-Appellee.

No. 97-2234

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                           No. 97-2258

FRANCISCO ROMO-MEDINA,

    Defendant-Appellee.

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                           No. 97-2259

RAMON GUTIERREZ-TREVISO,

    Defendant-Appellee.

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                           No. 97-2260

DANIEL MEDRANO-PARRA,

    Defendant-Appellee.

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                             No. 97-2261

ORLANDO SANDOVAL-RASCON,

    Defendant-Appellee.

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                             No. 97-2262

ANASTASIO CORRAL-GUTIERREZ,

    Defendant-Appellee.

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                             No. 97-2263

GABRIEL DURAZO-MARTINEZ,

    Defendant-Appellee.

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                                  No. 97-2264

HECTOR CEBALLOS-ADETE,

    Defendant-Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO.[*]
(D.C. Nos. 96-CR-684, 96-CR-696, 97-CR-20-03, 97-CR-20-04, 97-CR-20-05,
97-CR-20-06, 97-CR-20-07, 97-CR-20-08, 97-CR-20-09, 97-CR-20-10)

---

Jason Bowles, Assistant United States Attorney (John J. Kelly, United States Attorney
and Alfred J. Perez, Assistant United States Attorney, with him on the briefs), Las
Cruces, New Mexico, for Plaintiff-Appellant.

Barbara A. Mandel, Assistant Federal Public Defender (Ann Steinmetz, Federal Public
Defender, with her on the brief), Las Cruces, New Mexico, and Charles Harwood, Silver
City, New Mexico, for Defendant-Appellee Octavio Dominguez-Carmona.

Robert J. McDowell, Assistant Federal Public Defender, Las Cruces, New Mexico, on the
brief, for Defendant-Appellee Jorge Hernandez-Villanueva.

Carmen E. Garza, Las Cruces, New Mexico, on the brief, for Defendants-Appellees, Jose
Rubio-Loya, Francisco Romo-Medina, Ramon Gutierrez-Treviso, Daniel Medrano-Parra,
Orlando Sandoval-Rascon, Anastasio Corral-Gutierrez, Gabriel Durazo-Martinez and
Hector Ceballos-Adete.

---

Before **BALDOCK**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

   [*] On July 20, 1998, we consolidated these cases for purposes of oral argument and
ordered each party to designate two attorneys to argue the cases.

**BALDOCK**, Circuit Judge.

Under U.S.S.G. § 5K2.0, a sentencing court may depart downward and impose a sentence outside the applicable guideline range where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." This appeal requires us to determine whether the district court abused its discretion when it departed downward pursuant to § 5K2.0 and sentenced Defendants, Mexican citizens who carried backpacks full of marijuana into the United States, based on the amount of drugs contained in their respective individual backpacks, their socioeconomic status, and their lack of sophistication. Defendants argue that the government's appeals are moot because they have served their sentences and been deported to Mexico. Our jurisdiction arises under 28 U.S.C. § 1291. Concluding that the appeals are not moot and that the sentences the district court imposed are plainly contrary to the sentencing guidelines, we reverse and remand for further proceedings.

I.

Defendants are Mexican citizens. In October and November, 1997, individual drug smugglers recruited Defendants to carry backpacks of marijuana across the border from Mexico into the United States. The smugglers instructed Defendants to meet in

5

specified locations with several other persons recruited for the same purpose. Defendants each agreed to carry backpacks across the border and turn over the contents to a United States contact. Defendants carried the marijuana across the border. Border Patrol agents observed Defendants and attempted to apprehend them. Although a number of the "backpackers" escaped, Border Patrol agents apprehended Defendants and seized their backpacks and the backpacks abandoned by other group members who fled.

Defendants subsequently pled guilty to importing marijuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(2) and possessing with intent to distribute over 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Under the plea agreement, the government stipulated that Defendants were entitled to three-level reductions for acceptance of responsibility, four-level reductions for having only a minimal role in the offense and two-level reductions under U.S.S.G. § 5C1.2's "safety valve" provision. At sentencing, Defendants requested that the court depart further downward on the basis that only the amount of marijuana contained in their individual backpacks were attributable to them for sentencing purposes. The government strenuously objected to any further departure, arguing that any further departure would be contrary to the sentencing guidelines. Over the government's objection, the district court departed downward under U.S.S.G. § 5K2.0 and sentenced each Defendant to twelve-

months imprisonment.[1]  The government appeals the sentences.

II.

Defendants move to dismiss the government's appeals for lack of subject matter jurisdiction.  Specifically, Defendants argue that because their sentences are complete and they have been deported to Mexico, the government's appeals are moot.  Accordingly, we must determine whether we have jurisdiction to proceed to the merits of the appeals.

The mootness doctrine derives from Article III's requirement that federal courts decide only actual cases between litigants.  See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 400 (1979).   A case becomes moot when events occur which resolve the controversy underlying it.  Burke v. Barnes, 479 U.S. 361, 363 (1986).  In such a situation, a federal court decision provides no resolution between the parties to the lawsuit and therefore, constitutes a constitutionally impermissible advisory opinion.  See e.g., United Public Workers of America v. Mitchell, 330 U.S. 75, 78 (1947).

Situations arise, however, where even though a favorable federal court decision will not resolve a plaintiff's primary injury, a collateral injury remains which a federal court decision may remedy.  In Sibron v. New York, 392 U.S. 40, 56 (1967), the Supreme Court explained that criminal appeals are moot only where dismissing the case as moot will have no "collateral legal consequences" upon the defendant.  Prior to the introduction

---

[1]  The district court sentenced Defendant Dominguez-Carmona to ten-months imprisonment.  All other Defendants received sentences of twelve-months and one day.

7

of the sentencing guidelines, federal courts generally dismissed as moot, appeals attacking sentences which defendants already served. E.g., North Carolina v. Rice, 404 U.S. 244 (1971). These decisions rest on the notion that no collateral consequences attach to an already served sentence. See id. Under the sentencing guidelines, however, the length of an already served sentence may serve to enhance sentences imposed for future crimes. See U.S.S.G. § 4A1.1. We have held that, in light of the guidelines, an appeal of an already completed sentence is not moot if there is any possibility that the length of the disputed sentence may affect the duration of any future sentence. United States v. Chavez-Palacios, 30 F.3d 1290, 1293 (10th Cir. 1994); accord United States v. Cottman, 142 F.3d 160, 165 (3d. Cir. 1998); United States v. Kassar, 47 F.3d 562, 565 (2d Cir. 1995); United States v. Fadayini, 28 F.3d 1236, 1241 (D.C. Cir. 1994); United States v. Dickey, 924 F.2d 836, 838 (9th Cir. 1991).

Defendants' contention that the appeals are moot because they have completed the sentences imposed by the district court is incorrect. Pursuant to the sentencing guidelines, Defendants each received two criminal history points as a result of the twelve-month sentences the district court imposed. If, as the government argues, the district court should have sentenced each Defendant to twenty-four months, Defendants should have received three criminal history points. See U.S.S.G. § 4A1.1(a). Because the length of the sentence imposed in this case will affect the computation of criminal history points for any future federal sentences which Defendants may receive, collateral consequences

exist and the appeals are not moot.  E.g., Chavez-Palacios, 30 F.3d at 1293.

Moreover, to the extent Defendants contend that their deportation prevents us from granting effective relief to the government if it prevails on appeal, we reject that argument as well.  In United States v. Villamonte-Marquez, 462 U.S. 579 (1983), a jury convicted two foreign nationals of drug smuggling.  On appeal, the Second Circuit reversed their convictions based upon a perceived Fourth Amendment violation.  The government successfully filed a petition for certiorari with the Supreme Court but did not obtain a stay of the mandate.  Accordingly, while the case was pending before the Supreme Court, the defendants were released from custody and deported.  The defendants argued that their deportation mooted the matter.  The Court concluded that because defendants could be extradited and imprisoned for their crimes or could re-enter this country on their own and be subject to arrest and imprisonment, their deportation did not render the case moot.

If the government is successful in this appeal, it could seek to have Defendants extradited[2] or they could re-enter the country on their own.  In either situation, Defendants would be subject to arrest and imprisonment for the remainder of their sentences.  Accordingly, we reject Defendants' argument that we cannot grant effective relief if the

---

[2]  Qualified by her statement that extradition in this case is a practical impossibility, Plaintiff's counsel conceded at oral argument the existence of an extradition treaty between the United States and Mexico which would presumably allow the government to extradite Defendants.  Although we realize the difficulties associated with extraditing a Defendant from a foreign country, we are reluctant to assume that the Mexican government would not cooperate with United States authorities regarding extradition in this case.

government prevails in this appeal.

## III.

Prior to the advent of the sentencing guidelines, federal district judges enjoyed broad discretion in determining whether and how long an offender should be incarcerated. Mistretta v. United States, 488 U.S. 361, 363 (1989). This discretion led to a public perception that "federal judges [meted] out an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances." Koon v. United States, 518 U.S. 81, 92 (1996) (citations omitted). As a result, Congress created the United States Sentencing Commission (Commission) and charged it with specifying "an appropriate sentencing range for each class of convicted persons" based on various factors related to the offense and the offender. Id. (internal quotations omitted). Consistent with Congress' mandate, the Commission drafted the Sentencing Guidelines with the idea that courts would "treat each guideline as carving out a 'heartland'; a set of typical cases embodying the conduct that each guideline describes." Id. at 93 (internal quotations omitted). The Commission realized, however, that certain unusual circumstances which the Commission did not contemplate when drafting a particular guideline could take a case outside the "heartland" of cases covered by the applicable guidelines. Id. at 92. Accordingly, the Commission gave the district courts discretion to depart downward in atypical cases, where the Guidelines linguistically apply, but where the conduct at issue significantly differs from the norm. Id. at 93.

In determining whether the Commission adequately considered certain factors, a court may "'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" Koon, 518 U.S. at 92 (1996) (quoting 18 U.S.C. § 3553(b)). "In these sources, the Commission forbids consideration of a few grounds for departure, discourages or encourages use of some specific grounds, and does not mention others." United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997). Where the commission has forbidden consideration of a ground for departure, the district court may not consider the factor in its decision to depart downward. See Koon, 518 U.S. at 93. Where the Commission discourages use of a specific ground for departure, departure based on that ground is permissible "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. at 96. Finally, where a ground for departure is not mentioned in the Guidelines, departure on that basis is appropriate only where, in light of the structure and theory of the guidelines, the ground takes the case outside the "heartland" of cases considered by the guidelines. Id.

The government argues that the district court improperly departed downward pursuant to U.S.S.G. § 5K2.0 based on factors already contemplated by the Commission in drafting the guidelines. Specifically, the government contends that, in departing downward, the district court erroneously: (1) attributed to each individual Defendant only that amount of drugs he carried in his individual backpack; (2) considered Defendants'

11

socioeconomic status; and (3) relied on Defendants' lack of sophistication. The record clearly demonstrates that the district court relied on the above factors in determining that the circumstances in Defendants' cases warranted a downward departure under § 5K2.0. Therefore, we must determine whether the Sentencing Commission adequately considered the circumstances the district court relied upon when promulgating the guidelines at issue. In making this determination, we apply a "unitary abuse-of-discretion standard which includes review to determine that the discretion [of the district court] was not guided by erroneous legal conclusions." United States v. Collins, 122 F.3d 1297, 1302 (10th Cir. 1997) (internal quotations omitted). In most cases, a district court's decision to depart from the guidelines is due substantial deference. Id. However, when an issue is primarily legal, our review is plenary and we need not defer to the district court's decision. Id.

A.

In granting Defendants' motions for downward departure pursuant to U.S.S.G. § 5K2.0, the district court attributed to each Defendant only the amount of marijuana which that particular Defendant carried across the border. The district court relied in part on that attribution in determining that the circumstances surrounding Defendants' cases took the cases outside the "heartland" of cases contemplated by the guidelines. Pointing to U.S.S.G. § 1B1.3, comment. (n. 2(c)(8)), the government argues that the district court's reliance on only the amount of drugs each individual Defendant carried is clearly contrary to controlling guideline commentary. We agree.

12

In the commentary to U.S.S.G. § 1B1.3, the Commission specifically addresses

backpacker sentencing. The commentary states:

> Defendants T, U, V, and W are hired by a supplier to backpack a quantity of
> marijuana across the border from Mexico into the United States.
> Defendants T, U, V, and W receive their individual shipments from the
> supplier at the same time and coordinate their importation efforts by
> walking across the border together for mutual assistance and protection.
> Each defendant is accountable for the aggregate quantity of marijuana
> transported by the four defendants. The four defendants engaged in a
> jointly undertaken criminal activity, the object of which was the importation
> of the four backpacks containing marijuana . . . and aided and abetted each
> other's actions . . . in carrying out the jointly undertaken criminal activity.
> In contrast, if Defendants T, U, V, and W were hired individually,
> transported their individual shipments at different times, and otherwise
> operated independently, each defendant would be accountable only for the
> quantity of marijuana he personally transported.

U.S.S.G. § 1B1.3, comment. (n. 2(c)(8)). As this commentary illustrates, the Commission

clearly considered and rejected the district court's position that persons caught

backpacking marijuana across the border in groups should be held accountable for only

the amount of marijuana that particular individual carried. The facts in the cases before

us fall well within the "heartland" of cases the Commission had in mind when it drafted

§ 1B1.3. Accordingly, we conclude the district court improperly departed downward

under § 5K2.0 on the basis that each Defendant was accountable only for that amount of

marijuana he personally carried across the border.[3]

---

[3] Aside from being clearly at odds with binding guideline commentary, the district
court's act of attributing to each Defendant only that amount of marijuana he personally
carried also conflicts with the actual crimes to which Defendants' pled guilty. Defendants
(continued...)

13

B.

During sentencing, the district court indicated that a departure under § 5K2.0 was warranted in part because Defendants were poor and desperate for money. The government contends that the district court erred by basing its decision to depart downward pursuant to U.S.S.G. § 5K2.0 on that basis. It is well established that socioeconomic status is "not relevant in the determination of a sentence." U.S.S.G. § 5H1.10; United States v. Collins, 122 F.3d at 1301 n.3 (sentencing court may not base downward departure on socioeconomic status.). The district court, based upon the record before us, erred by considering Defendants socioeconomic status in its decision to depart

---

[3](...continued)
each pled guilty to possessing with intent to distribute over 100 kilograms of marijuana. The district court's decision to attribute to each Defendant only that amount of marijuana he individually carried (approximately 40 pounds), therefore, is clearly inconsistent with the crimes to which each Defendant pled guilty (possessing approximately 400 pounds).

We further note that the district court's act of attributing to each Defendant only that amount of marijuana which he individually carried is inconsistent with the two-level "safety-valve" reduction the district court granted pursuant to U.S.S.G. § 5C1.2. The "safety-valve" allows a district court to avoid imposing a mandatory minimum sentence if a defendant meets certain criteria. Under U.S.S.G. § 2D1.1(b)(4), a defendant who pleads guilty to importing illegal drugs may receive a "safety-valve" reduction if the level of his or her offense is 26 or above. Defendants each pled guilty to importation and possession with intent to distribute more than 100 kilograms of marijuana. As a result, Defendants received an offense level of 26. If, as the district court believed, Defendants were properly sentenced based on the amount of marijuana he individually carried, their offense levels would be around 14 or 16. An offense level of neither 14 nor 16 would be high enough to warrant the safety-valve reduction to which the government stipulated in this case.

14

downward.

C.

The district court also considered Defendants' apparent lack of sophistication in deciding to depart downward under U.S.S.G. § 5K2.0. The government argues that the district court inappropriately based its decision to depart downward on this factor. We believe the district court erred by departing downward on this basis as well.

We begin by noting that a defendant's lack of sophistication <u>may</u> be a proper basis for granting a downward departure. <u>See</u> <u>United States v. Castro-Cervantes</u>, 927 F.2d 1079, 1081 (9th Cir. 1990); <u>United States v. Jagmohan</u>, 909 F.2d 61, 65 (2d. Cir. 1990); <u>Cf.</u> <u>United States v. Talk</u>, 13 F.3d 369, 371 (10th Cir. 1993) (refusing to foreclose possibility that lack of sophistication could be proper basis for downward departure). This does not mean, however, that every defendant lacking sophistication is entitled to a downward departure on that basis. Instead, the lack of sophistication must be such as to remove the case from the "heartland" of cases contemplated by the Commission. For the reasons that follow, we conclude the district court erroneously based its decision to depart downward on Defendants' lack of sophistication.

Although the guidelines do not explicitly discuss the relevance of a defendant's lack of sophistication in sentencing, U.S.S.G. § 3B1.2 seems to consider a defendant's lack of sophistication. The commentary to § 3B1.2(a) reads:

> Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least

15

culpable of those involved in the conduct of a group.  Under this provision, the defendant's <u>lack of knowledge or understanding of the scope</u> and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

U.S.S.G. § 3B1.2(a) Comment. (n. 1) (emphasis added).

It is intended that the downward adjustment for a minimal participant will be used infrequently.  It would be appropriate, for example . . . where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

U.S.S.G. § 3B1.2(a) Comment. (n. 2).

In drafting § 3B1.2(a), the Commission recognized the need to distinguish between sophisticated criminals who organize and implement criminal schemes and those less sophisticated individuals who supply the labor to carry them out.  Recognizing Defendants' lack of sophistication and minimal participation in the operation, the district court awarded each Defendant a four-level reduction for being a minimal participant. Only if Defendants were unsophisticated to a degree not considered by the Commission in drafting the guidelines, would an additional downward departure for lack of sophistication be proper.  <u>See</u> <u>Koon</u>, 518 U.S. at 92 (citing 18 U.S.C. § 3553(b)).  The nature of the crimes to which Defendant pled guilty and the evidence contained in the record suggest that Defendants' lack of sophistication is not unusual to the degree necessary to remove it from the "heartland" of cases contemplated by the guidelines. Accordingly, we conclude the district court erroneously departed downward based on Defendants' apparent lack of sophistication.

16

IV.

For the foregoing reasons, we DENY Defendants' motion to dismiss the appeal as moot, REVERSE Defendants' sentences and REMAND to the district court with instructions that Defendants be sentenced in accordance with this opinion and the applicable sentencing guidelines.

97-2197, 97-2202, 97-2234, 97-2258, 97-2259, 97-2260, 97-2261, 97-2262, 97-2263, and 97-2264, *United States v. Dominguez-Carmona*, *Hernandez-Villanueva*, *Rubio-Loya*, *Romo-Medina*, *Gutierrez-Treviso*, *Medrano-Parra*, *Sandoval-Rascon*, *Corral-Gutierrez*, *Durazo-Martinez*, and *Ceballos-Adete*.

**LUCERO**, Circuit Judge, concurring.

I concur in the majority holding, but I write separately concerning the issue of mootness. The defendants have served their sentences in full, and the possibility that they will face longer sentences in the future based on their criminal history points is too speculative to save the government's sentence challenges from mootness. Yet, I conclude that this controversy is live because the defendants could either be extradited or could voluntarily return to the United States.

**I**

In order for a controversy to be justiciable, it must be "definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240 (1937). If the parties do not have a genuine stake in the outcome of a case, or if the threat of injury is merely hypothetical or conjectural, the case fails to establish a justiciable case or controversy. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). A criminal case is not moot if resolution of the disputed issue could have "collateral legal consequences." Sibron v. New York, 392 U.S. 40, 57 (1968); see Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968).

# A

When viewed in the context of the Supreme Court's recent decision in Spencer v. Kemna, 118 S.Ct. 978 (1998), the collateral consequence of additional criminal history points the government invokes to overcome mootness is too speculative to overcome such a finding. The government argues that if a defendant should return to the United States and be arrested for a new crime, he could receive a longer sentence based on the additional criminal history points he would receive if the government prevails in this appeal.

Relying in part on constitutional separation of powers concerns, the Supreme Court in Spencer, 118 S.Ct. at 983-85, declined to presume the existence of collateral consequences in the context of parole revocation. In the process, the Court cast into doubt the practice of using highly speculative collateral consequences to stave off mootness in other contexts. This reasoning is applicable to challenges to the duration of fully served sentences. The Spencer Court found moot a habeas petitioner's challenge to the revocation of his parole—after the petitioner had completed serving both his jail and parole terms—because the petitioner faced no collateral consequences from the allegedly improper parole revocation. See id. at 986-87. The Court rejected as too speculative the possibility that the petitioner's parole revocation could affect future parole determinations should he be rearrested. Even though the petitioner

had already in fact been rearrested on a new offense at the time the Court ruled, future parole determinations still remained "a possibility rather than a certainty or even a probability," and hence too speculative to overcome mootness. Id. at 986. The Court also found too speculative the possibility that parole revocation could be used to increase the length of a future sentence or as evidence in subsequent proceedings. Id. at 986-87. Spencer concludes that the risk of injury to a party's interest must not be excessively remote if such a contingency is to keep the controversy alive. Id. at 986.

In Lane v. Williams, 455 U.S. 624 (1982), cited with approval in Spencer, see 118 S.Ct. at 986, the Court held that habeas petitioners' challenges to the constitutionality of mandatory parole terms that had been accepted pursuant to plea bargains were moot because petitioners—who had both been re-jailed for parole violations—had finished serving their sentences and parole terms. See 455 U.S. at 624-25. The Lane Court overturned the Seventh Circuit's conclusion that future consequences of such parole revocation decisions constitute collateral consequences that could overcome mootness. See id. at 631-33. The Court rejected the argument that a parole revocation could harm future employability, noting that a prospective employer would have discretion whether to give weight to a prior parole revocation. See id. at 632-33. The Court also rejected the argument that a parole revocation could affect the duration of a future sentence or

parole eligibility, finding that such consequences would be contingent on a petitioner's rearrest and reconviction and on the discretion of the judge or parole authority.  See id. at 632-33 n.13.

The possibility that the defendants before us today will be subject to longer future sentences—a possibility the government invokes to support a finding of a live controversy—is no less speculative than the consequences at issue in Spencer and Lane.  It presumes that defendants will re-enter the country and commit another crime.  Not only is this highly speculative, it is contrary to the presumption that an individual will act in accordance with the law.  See Spencer, 118 S.Ct. at 987 (quoting O'Shea v. Littleton, 414 U.S. 488, 497 (1974)); Royal College Shop v. Northern Ins. Co., 895 F.2d 670, 682 (10th Cir. 1990) (citing NLRB v. Shawnee Indus., 333 F.2d 221, 225 (10th Cir. 1964)).  Although the majority cites numerous cases to support the proposition that the possibility of a longer future sentence, based on an increase in criminal history points, keeps a case alive, see United States v. Cottman, 142 F.3d 160, 165 (3rd Cir. 1998); United States v. Kassar, 47 F.3d 562, 565 (2d Cir. 1995); United States v. Chavez-Palacios, 30 F.3d 1290, 1293 (10th Cir. 1994); United States v. Fadayini, 28 F.3d 1236, 1241 (D.C. Cir. 1994); United States v. Dickey, 924 F.2d 836, 838 (9th Cir. 1991), for the reasons stated, I believe that the Court's decision in Spencer trumps these cases.

**B**

In <u>United States v. Villamonte-Marquez</u>, 462 U.S. 579, 581 n.2 (1983), however, the Supreme Court specifically held that a government appeal was not moot where defendants who had been deported to Mexico could either be extradited to or could somehow voluntarily re-enter the United States to serve their sentences. While there appears to be some tension between <u>Spencer</u> and <u>Villamonte-Marquez</u>, I nevertheless conclude, on the basis of <u>Villamonte-Marquez</u>, that the possibility of defendants' extradition to or voluntary return to the United States saves the government's sentence challenges from mootness. <u>See</u> <u>Villamonte-Marquez</u>, 462 U.S. at 581 n.2.

**II**

I join in the remainder of the majority opinion. I add only that I do not fault the trial courts for the compassion and mercy that underlie their actions. That sentiment notwithstanding, the Sentencing Guidelines preclude the relief fashioned here. To the extent that the Guidelines are inadequate to credit such concern, corrective action must come from the Sentencing Commission, not from this court.