**UNITED STATES of America,**
**Appellee,**

v.

**Donovan GAYLE, Defendant–Appellant.**

**No. 04–0762–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 18, 2004.

Decided: Nov. 22, 2004.

---

David A. Lewis, Legal Aid Society, Federal Defender Division, New York, New York, for Appellant.

Lee J. Freedman, Assistant United States Attorney, of counsel, Brooklyn, New York, (Susan Corkery, Assistant United States Attorney, of counsel, on the brief, Roslynn Mauskopf, United States Attorney, Brooklyn, New York), for Appellee.

Before: JACOBS, SOTOMAYOR, HALL, Circuit Judges.

JACOBS, Circuit Judge.

Defendant Donovan Gayle contests an upward departure in the sentence imposed upon him in the United States District Court for the Eastern District of New York (Block, *J.*). The district court justified the departure on the grounds that the criminal history category insufficiently reflected the likelihood of recidivism and that Gayle had previously received lenient treatment for his criminal activities. Gayle contends that the determination as

to the likelihood of recidivism was predicated solely on his repeated commission of offenses that are similar, that the number of offenses is already fully reflected in the criminal history points for those convictions, and that similarity of offenses does not predict greater recidivism.

We review *de novo* whether the departure was justified by the facts of the case. PROTECT Act, 18 U.S.C. § 3742(e)(3)(B)(iii); *United States v. Simmons*, 343 F.3d 72, 78 (2d Cir.2003). Based on the entire record, we conclude that the departure was justified.

## BACKGROUND

Gayle was arrested in February 2003 by New York City police officers who saw him drive the wrong way down a one-way street; as they approached, they noticed his attempt to conceal a loaded Springfield Armory Ultra–Compact .45–caliber semi-automatic pistol. The police subsequently learned that the gun had been reported stolen, that Gayle had four prior felony convictions, and that he had been deported four years earlier. Gayle pled guilty to two felony counts: (i) illegal possession of a firearm following a felony conviction in violation of 18 U.S.C. § 922(g), and (ii) illegal re-entry into the United States after deportation, in violation of 8 U.S.C. § 1326(a), (b)(1).

At sentencing, the government moved for an upward departure in the criminal history category on the grounds that it did not account for [i] the heightened likelihood of recidivism reflected by the fact that all five convictions were for criminal possession of a firearm, and [ii] the leniency of the punishment for prior offenses.

Gayle was first convicted in 1987, when he pointed a gun at another individual near the gate to a New York high school. The 17–year–old Gayle was treated as a youthful offender and was placed on probation for five years. Within two years, Gayle was again arrested for criminal possession, and arrested again for the same conduct six months after that. As those two later offenses violated the terms of his probation, Gayle was re-sentenced on his first offense to one-to-three years' imprisonment, to be served concurrently with one-to-three year sentences on each of the later offenses. He was released from prison within two years. Upon his release from parole two-and-a-half years later, Gayle was designated for deportation, but for reasons unclear from the record before us, remained in the country.

Less than two years after his release from parole, Gayle was once again convicted of criminal possession of a firearm and sentenced to four-to-eight years' imprisonment. Gayle served four years and was deported in 1999.

Throughout the period of his prior convictions, Gayle was also arrested multiple times for offenses which, for various reasons, went uncharged. And despite earning adequate income to require him to do so, Gayle never paid taxes, an offense for which he has never been charged. Sometime following his deportation, Gayle illegally re-entered the United States and continued his criminal career.

It has become clear on appeal that an error was made in the calculation of the criminal history category from which the district court departed. The probation department classified Gayle as a Category IV offender (rather than in Category V) because it did not count Gayle's juvenile offense—a classification upon which the district court and the parties apparently relied at sentencing. However, by virtue of U.S.S.G. §§ 4A1.2(d)(1) and 4A1.2(k)(1), the juvenile offense was includable because Gayle was ultimately sentenced to one-to-three years for that offense (having violated the terms of parole). *See United*

*States v. Driskell,* 277 F.3d 150, 158 (2d Cir.2002). The district court accurately intuited an understatement in criminal history, and departed upward. Believing that it was making a two-level upward departure, the court sentenced Gayle as a Category VI offender. A proper accounting for Gayle's youthful offender conviction (without upward departure) would place him into Category V. At issue on this appeal is the five-month sentencing increment between Gayle's sentence at Category V and the sentence imposed by virtue of the departure to Category VI. Since upon our *de novo* review, we find ample support for a single category-level departure, the confusion caused by the PSR need not concern us.

## Discussion

 An upward departure may be appropriate "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). The Background section of the commentary to § 4A1.3 states that § 4A1.3 "authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism." Inadequacy of a defendant's criminal history category is thus an "encouraged" basis for departure. *Simmons,* 343 F.3d at 78 (*quoting Koon v. United States,* 518 U.S. 81, 94–95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). In deciding whether to impose a departure on a ground that is encouraged, a sentencing court should ask, "[w]hat features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?" *Koon,* 518 U.S. at 95, 116 S.Ct. 2035 (*quoting*

*United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993) (Breyer, *C.J.*)). Then, "[i]f the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account." *Id.* at 96, 116 S.Ct. 2035.

Gayle argues that the finding on which the departure rests—that the likelihood of recidivism is greater when prior convictions are for the same offense—is adequately accounted for by his otherwise applicable criminal history category. According to Gayle, the likelihood of recidivism does not depend on whether the defendant lacks the versatility and the imagination to branch out. The government urges that our opinion in *United States v. Kassar,* 47 F.3d 562, 565–66 (2d Cir.1995), *abrogated on other grounds by Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) *and United States v. Mercurris,* 192 F.3d 290 (2d Cir. 1999), justifies a finding of increased likelihood of recidivism based on repeated commission of similar, as opposed to various, criminal offenses. *See also United States v. Schmude,* 901 F.2d 555, 559 (7th Cir.1990).

 Our earlier cases reviewed sentencing departures for clear error. *See, e.g., Kassar,* 47 F.3d at 566. Our standard of review now, however, is to consider *de novo* "whether a departure is 'justified by the facts of the case.'" *Simmons,* 343 F.3d at 78 (*quoting* PROTECT Act, 18 U.S.C. § 3742(e)(3)(B)(iii)).

 We agree with Gayle up to a point. Gayle's criminal history category, without any upward departure, accounts for the number of Gayle's prior convictions, which serves as a proxy for his likelihood of recidivism. *See, e.g.,* U.S.S.G. Ch. 4, intro. cmt. (noting that "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation"); United States Sentencing Commission, *Measuring Recidivism: The Criminal History Com-*

*putation of the Federal Sentencing Guidelines* 2 (May 2004), *available at* http://www.ussc.gov/publicat/Recidivism_General.pdf (describing purpose of criminal history category as to account for "recidivism" and "culpability" and measuring predictive ability of criminal history category as pertains to recidivism). There is no record to compare the risk of recidivism as between repeat offenders who repeatedly commit the same offense and those who commit a variety of offenses. We therefore assume, as Gayle urges, that in general both kinds of offenders are in the "heartland" of the guidelines, *see Koon*, 518 U.S. at 96, 116 S.Ct. 2035 (*quoting Rivera*, 994 F.2d at 949), absent other factors that are "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b)(1); *see also United States v. Mishoe*, 241 F.3d 214, 218 (2d Cir.2001).

■ Some of our sister circuits have concluded that "[r]ationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again— greater sanctions than might be required for a defendant who has never been convicted of a similar offense." *Schmude*, 901 F.2d at 559 (7th Cir.), *citing United States v. De Luna–Trujillo*, 868 F.2d 122, 125 (5th Cir.1989) *and United States v. Fisher*, 868 F.2d 128, 130 (5th Cir.1989). That general proposition has intuitive appeal but seems over-broad. True, a defendant who commits the same offense has manifestly not learned his lesson; but it does not serve the goals of sentencing if the lesson absorbed is to try some other kind of offense. We conclude that recidivism is better gauged by considering the defendant's entire record to determine whether it involves factors "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b)(1). Repetition of similar offenses does not alone provide a sufficient basis for finding that a defendant's record is "of a kind" or "degree" different from the typical cases considered by the Sentencing Commission in crafting the guidelines. *See, e.g, United States v. Sprei*, 145 F.3d 528, 534–35 (2d Cir.1998) (concluding that departure based on factor common to many cases is improper).

As to Gayle, however, we can easily conclude that factors bearing on recidivism are outside of the guidelines heartland reflected by his otherwise applicable criminal history category. There is ample evidence of Gayle's dogged criminal persistence:

● As in *Kassar*, the appellant here committed the same offense repeatedly as well as proximately in time; and while some of the Gayle's offenses are more widely spaced in time than Kassar's, Gayle seems to have been doing his best considering the periods in which he was handicapped by imprisonment or deportation. *See Kassar*, 47 F.3d at 566–67. (Although we are not bound by the holding of *Kassar*, we may profitably consult its reasoning.)

● Gayle was the beneficiary of light prison sentences, and yet continued to "flout[ ]" the "laws of this country," *see id.* at 567, despite being given an opportunity as a juvenile offender for a "fresh start," *Driskell*, 277 F.3d at 156; *see also United States v. Diaz–Collado*, 981 F.2d 640, 644 (2d Cir.1992) (noting the "Guidelines explicitly recognize that departures may be warranted when a defendant's previous sentences" have been "extremely lenient") (*citing* U.S.S.G. § 4A1.3; *United States v. Agard*, 77 F.3d 22, 26 (2d Cir.1996) (citing "criminal behavior [that] constituted a serious breach of the trust that the court had placed in him by imposing [a prior] lenient sentence").

● Gayle's persistence is further evidenced by his uncharged criminal con-

duct, his commission of multiple offenses while on probation, and his commission of an offense while pending sentencing for another. *See, e.g., United States v. Morris,* 350 F.3d 32, 38 (2d Cir.2003) (finding of increased likelihood of recidivism based on uncharged criminal conduct not clearly erroneous); *Agard,* 77 F.3d at 26 (affirming upward departure that followed probation violation); U.S.S.G. 4A1.3 (Policy Statement).

• The final salient circumstance is that Gayle re-entered and remained in the country illegally following deportation for the evident purpose of committing additional crimes.

These circumstances are not fully reflected in Gayle's otherwise applicable criminal history category, which is based solely on the timing, number and seriousness of prior convictions. We therefore conclude that a departure is warranted on the basis of both his likelihood of recidivism as shown by numerous factors in his criminal record and his prior lenient treatment. Reviewing *de novo* the justification for departure, the "facts of the case" amply support a one-level upward departure in criminal history category level to category VI. *See Simmons,* 343 F.3d at 78 *quoting* PROTECT Act, 18 U.S.C. § 3742(e)(3)(V)(iii).

### CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

Gayle's supplemental brief argues that enhancement of his criminal history category was plain error in violation of his Sixth Amendment rights under *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We will not apply *Blakely* to the Federal Guidelines unless and until the Supreme Court rules that we must. *See United States v. Mincey,* 380 F.3d 102 (2d Cir.2004). We therefore re-

ject Gayle's *Blakely* claims at this time. The government argues that even if *Blakely* were to apply to the sentencing guidelines, the enhancements in Gayle's sentence are based on the fact of his prior convictions and thus authorized under *Almendarez–Torres v. United States,* 523 U.S. 224, 229–48, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); however, the enhancements in this case go beyond the mere "fact of a prior conviction" permitted by *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *see also United States v. Santiago,* 268 F.3d 151, 156 (2d Cir.2001) (holding judge can appropriately find "who, what, when and where" of a prior conviction). Therefore, the mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* No. 04–104, and *United States v. Fanfan,* No. 04–105 (argued October 4, 2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion [or order] that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until fourteen days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*